BANKS *v.* MONTGOMERY WARD & COMPANY, INC.

[No. 74, October Term, 1956.]

32

34

*Decided January 14, 1957.*

The cause was argued before BRUNE, C. J., and COLLINS, HENDERSON, HAMMOND and PRESCOTT, JJ.

*Stanley G. Robins* and *John B. Robins,* with whom were *Emerson C. Harrington, Jr.,* and *Robins &. Robins* on the brief, for the appellant.

*William W. Travers,* with whom were *Webb, Bounds & Travers* on the brief, for the appellee.

HAMMOND, J., delivered the opinion of the Court.

After a criminal prosecution for giving Montgomery Ward & Company,. Inc., a bad check had ended in her favor, Thelma Banks sued the· company for· maliciously prosecuting her: At the end of plaintiff's case, the trial court ruled there had been probable cause for the prosecution and directed a verdict.·

Thelma Banks complains here of the directing of the verdict and of the admission into evidence of regulations of Montgomery Ward, purporting to limit the authority of its local agents.

The light most favorable to plaintiff must be thrown on the evidence and the legitimate inferences from it to guide the court in determining as a matter of law, as it must in cases of this kind, whether the private prosecutor had probable cause for acting as it did. *Safeway Stores, Inc. v. Barrack,* 210 Md. 168. With this in mind, we consider the testimony for the appellant.

Thelma Banks and her husband had operated a grocery business in Salisbury called Banks' Market for some years before the giving of the check. Montgomery Ward operates a retail branch store in Salisbury and Mrs. Banks had dealt there for years. Her checks had been accepted regularly without question or difficulty. On January 24, 1955, Mrs. Banks bought a coat for her daughter at a sale. Before leaving home, she had drawn a Banks' Market check to her order and signed it, as she was authorized to do. She tendered the check in payment for the coat. The sales girl took the check to the office to have it approved, returned, and put it in the cash drawer without comment, giving Mrs. Banks the change and the coat. That Mrs. Banks inadvertently had failed to endorse the check was not noticed by her, the sales girl or her superior who approved it. In a day or two, the bank returned the check for the sole reason that it was not endorsed. When it was given, when it was presented for payment, and at all later times here material, there were on deposit in the account of Banks' Market funds sufficient for the payment of the check.

Five or six days later, Montgomery Ward advised Mrs. Banks by telephone that the check needed her endorsement. She offered to make the endorsement while shopping in the store but the check could not be found. Then, although it was still unendorsed, Montgomery Ward sent the check to the bank a second time. Again it was returned solely for lack of endorsement and Mrs. Banks was notified that the check was at the store awaiting her endorsement. On Febru-

ary 10, 1955, she went to Montgomery Ward for the express purpose of endorsing the check. The cashier had it but refused to let her endorse it, insisting that she sign a new check. Mrs. Banks refers to the Banks' Market check as the "green one", and to the new check as the "white one". Her testimony was that the cashier gave her a white check to the printed order of Montgomery Ward and "told me to fill this check out. I asked her to explain to me what kind of a check it was; and she said that it was merely a form to cover the green one, and that it would be sent through the same as the green one. And I said, 'It isn't a Banks' Market check. The one I gave you was on Banks' Market.' She said, 'Well, you don't have to worry about that. I know what to do. It is my job here. I know what I am doing.'" Mrs. Banks said she told the cashier that she had no personal account and that the name Banks' Market should be on it. The cashier's answer was: "I didn't have to tell her what to do, that she knew her job." On cross-examination, Mrs. Banks said the cashier "refused to let me endorse the green check" and then said: "the check was no good; that it had come back from the bank twice and she knew it was no good." Mrs. Banks said she did not know the white check was not good because it was supposed to be drawn on Banks' Market. She didn't think it was worthless. She testified: "I was going to put Banks' Market on there and she took it out of my hand and she said, 'You don't have to do my job; I know what I am doing.'"

Four or five days later a clerk telephoned to tell Mrs. Banks that the white check had been returned, marked "No account". Mrs. Banks said that either she or her husband would come up and straighten it out. Mr. Banks called Montgomery Ward and told them that he had arranged with the bank to honor the green check, which his wife had now endorsed, and that he would mail it to them in exchange for the white check. He enclosed the green check in a stamped envelope addressed to Montgomery Ward and put it on top of his desk for the mail man to pick up. Several days later, he noticed that it had not been picked up and went to the accounting department of Montgomery Ward, where he ad-

vised a lady who came up to wait on him who he was and that he was there to straighten out the check that his wife had given the company. He says that her answer was: " 'You have caused us one hell of a mess' " and suggests that she became more abusive, so that he turned away and left. His visit would seem to have been before the warrant was issued for his wife, who was arrested at their store and taken to the jail in Salisbury. She remained there under arrest until Mr. Banks posted $28.00, the amount of the check and $3.00 costs, with the Judge of the People's Court. At her insistence the case was called for trial several months later. She elected to be tried by the magistrate and pleaded not guilty. The lady magistrate called the name of the assistant manager of Montgomery Ward in Salisbury, who had sworn out the warrant, found that he had been transferred to New York and was not in court, and told the manager that it was her practice to require the individual who had sworn out the warrant to testify. She advised the manager that (as would have been preferable in the first instance, in her opinion) the person who took the check, who was in court, could swear out another warrant, or he could, and have the trial, or he could accept the money that had been put up as collateral and terminate the case. The manager declined to swear out the new warrant and thereupon the magistrate dismissed the case. The docket entries show the notation: "Traverser appeared, plead not guilty, complainant did not appear, trial had found not guilty and the case was dismissed. Restitution made." The magistrate testified that the notation of "Restitution made" was entered after court when she learned that Montgomery Ward had taken the money.

The manager of Montgomery Ward, called by the plaintiff, testified that he had told the magistrate at the hearing that it was not necessary that the assistant manager be there "in view of the fact that I represented Montgomery Ward in the case and was the manager of the local store." He also told the magistrate, he said, that in the past "it had always been the practice for the manager or the assistant manager to swear out the warrant, rather than the sales person who accepted the check" and that it was the practice of Montgom-

ery Ward to have either the manager or the assistant manager swear out the warrant in cases of bad checks "whenever it is necessary". The manager had knowledge that the warrant was to be sworn out before it was done, and directed that it be held up for several days until he found out whether Mr. Banks was going to bring in the green check.

To prevail in a suit for malicious· prosecution the plaintiff must show: (1) that the criminal proceeding instituted or abetted by the defendant has terminated in his favor, apart from whether any inference as to probable cause for the proceeding arises from the termination; (2) a want of probable cause for the proceeding which may, or may not, be inferred from the termination of the proceeding, depending upon the manner of the termination; (3) malice, which is a primary purpose for the institution of the proceeding, other than that of bringing an offender to justice. *Safeway Stores, Inc. v. Barrack,* 210 Md. 168, 173, *supra,* and authorities cited. We think the testimony that the manager and assistant manager of the Salisbury store were authorized to bring criminal prosecutions for the giving of bad checks whenever they felt it necessary, permits the inference that their act was within the scope of their employment and therefore the act of the employer. *Safeway Stores, Inc. v. Barrack,* just cited; *Julian Goldman Stores v. Bugg,* 156 Md. 36, 38.

The criminal proceeding clearly terminated in favor of the accused so as to meet the need for this result as an element of the tort. Criminal proceedings are terminated in favor of the accused on discharge by a magistrate at a preliminary hearing, by the failure of the grand jury to indict or by an acquittal. *Restatement, Torts,* Sec. 659. Although in the case before us, the magistrate sat not as a committing magistrate but as a trial magistrate, a judge of the People's Court for Wicomico County, what occurred at the hearing was quite analogous to a dismissal by a committing magistrate. It is generally held that if criminal proceedings end in favor of the accused other than by acquittal, because the charge is withdrawn or the prosecution abandoned pursuant to an agreement of compromise with the accused, or out of mercy requested or accepted by the accused, there is not such a

termination as will sustain a case for malicious prosecution. *Restatement, Torts,* Sec. 660. The appellee argues that this is such a case. In our view the evidence does not sustain the contention. Not only was the twenty-five dollars which Montgomery Ward accepted admittedly due by the Banks as a debt, but it was put up to secure the release of the accused pending trial, not to avoid the criminal charge. All that went on in the People's Court was somewhat informal and the posting of the money seems to have been regarded as the putting up of collateral. Mrs. Banks insisted upon trial being had. Montgomery Ward was given the option of swearing out a new warrant and proceeding with the trial, and it was its election that closed the case. We think that the trial did not end in favor of the accused by reason of compromise with, or at the behest of, the accused. For an excellent discussion, pertinent here, on the law of final termination of criminal proceedings in favor of the accused, see *Jaffe v. Stone* (Supreme Ct. of Calif.), 114 P. 2d 335, 338.

Mrs. Banks argues that the magistrate's finding that the case must be dismissed makes out a prima facie showing of lack of probable cause on the part of Montgomery Ward. Probable cause is a reasonable ground of suspicion supported by circumstances sufficiently strong in themselves to warrant a cautious man in believing that the accused is guilty. *Johns v. Marsh,* 52 Md. 323, 335; *Nance v. Gall,* 187 Md. 656, 669. Mere belief, however sincere, is not sufficient. There must be such grounds of belief founded upon actual knowledge of facts as would influence the mind of a reasonable person. *Pessagno v. Keyes,* 143 Md. 437. The general rule seems to be that *prima facie* evidence of want of probable cause is shown either by discharge by a magistrate upon preliminary hearing on the merits or the termination of the proceedings at the instance of the private prosecutor who initiated them, or by reason of his failure to press the charge. *Restatement, Torts,* Secs. 663, 665. An acquittal after trial by either a magistrate or a court is not of itself evidence of lack of probable cause. *Prosser on Torts,* 2nd Ed., Sec. 98, p. 656, says: "It is agreed that an acquittal after trial is no evidence of the lack of probable cause, since it amounts only to a decision that

the fact of guilt has not been proved beyond a reasonable doubt. On the other hand, a discharge by a magistrate after preliminary hearing, or the refusal of a grand jury to indict, is at least evidence that probable cause was lacking, since it is the function of such individuals to pass upon the sufficiency of the case against the accused to justify prosecution." Some courts hold that neither an acquittal nor a discharge on preliminary hearing is relevant on the question of probable cause since the decisive time for determining its presence or absence is the time the defendant acted and that this test is not to be affected by what later occurs. Mr. Justice Brennan so held for the Appellate Division of the Superior Court of New Jersey in *Shoemaker v. Shoemaker*, 78 A. 2d 605.

As was pointed out in *Safeway Stores, Inc. v. Barrack, supra,* at page 175 of 210 Md., this Court, in *Straus v. Young,* 36 Md. 246, 255, and *Nance v. Gall,* 187 Md. 656, 669, *supra,* definitely has held that dismissal by a magistrate at a preliminary hearing is *prima facie* evidence of lack of probable cause. The defendant, of course, may rebut the inference. We have been referred to no Maryland case, nor have we found any, that holds that an acquittal is evidence of lack of probable cause, although there are many cases that hold that despite an acquittal, the defendant in the malicious prosecution suit may show that the accused is guilty or that there was probable cause for prosecution. In the case before us, as we have said, there was much in what happened in the magistrate's hearing to make it the equivalent of a dismissal at a preliminary hearing, and it may well be that an inference of want of probable cause could arise either from the dismissal or from the election of Montgomery Ward not to press the charge and so, to terminate the prosecution, but we find it unnecessary to decide either point for we think appellant's other evidence permits a finding that Montgomery Ward did not have probable cause for instigating the criminal prosecution.

The appellant's evidence shows—and indeed it is conceded by the appellee—that there had been no crime and nothing to indicate a criminal intent up to the time of the giving of the white check. Code, 1951, Art. 13, Sec. 69, provides that where a holder of an instrument payable to his own order transfers

it for value without endorsement, the transferee acquires, in addition to the title of the transferer, the right to have the endorsement. The appellee contends that when it took the white check and gave up the green check, it gave up a thing of value under Code, 1951, Art. 27, Sec. 167, providing that every person who, "with intent to cheat and defraud another" obtains "anything of value" by means of a check drawn on a bank not indebted to the drawer, is deemed to have obtained the thing of value by means of a false pretense. The appellee argues further that under Sec. 167 the giving of the worthless check is *"prima facie* evidence of intent to cheat or defraud" unless the check is made good in ten days and that, therefore, at the expiration of the ten day period, there was probable cause for the institution of the criminal proceeding. Montgomery Ward's version of the giving of the white check, and subsequent events, has not been told but if we accept the appellant's version at its face value, as we do on this appeal, there was evidence rebutting the *prima facie* presumption of intent to cheat or defraud.

We think it cannot be said, as a matter of law, that Montgomery Ward had reasonable grounds of suspicion supported by circumstances strong enough to warrant a reasonable man in believing Mrs. Banks to have been guilty. An appraisal of Mrs. Banks' intent to defraud, to have been fair, cautious and reasonable, must have included a weighing of the facts that she was a customer of good standing over the years, the co-proprietor of an established and apparently solvent local business, that she had given a good check needing only her endorsement in exchange for merchandise she bought, and that loss of the good green check and the taking of the white check, which constituted the basis of the prosecution, was entirely at Montgomery Ward's insistence over Mrs. Banks' repeated objections. Moreover, consideration would have had to be given to Mrs. Banks' offers to endorse the good green check, offers that came to naught because the first time Montgomery Ward could not find the check and the second time, would not allow her to endorse it because of the delusion that it was "no good". There would have had to be remembered that the white check was not offered by Mrs. Banks. It was

taken by Montgomery Ward. It was extracted on the representation that it was merely a company form to cover the green check it replaced. There would have had to be remembered, too, that Mrs. Banks explained that she had no personal account, that the white check should have on it the name "Banks' Market" and should be drawn on that account, and that she was going to write Banks' Market on it when the cashier took it out of her hand, saying "You don't have to do my job; I know what I am doing." There would have had to be taken into account the telephone call from Mr. Banks to the manager, offering to reinstate the green check, and his visit to the store for this purpose only to be rebuffed with a discourteous reception. In *McWilliams v. Hoban,* 42 Md. 56, 64, umbrage of the plaintiff in a malicious prosecution suit at the defendant's charges and actions, umbrage that caused him to fail to pay over money claimed to be due by him from his collections as a bread salesman for the defendant, was regarded as evidence negating a criminal intent.

Mr. and Mrs. Banks took a casual and leisurely approach towards paying the white check and this undoubtedly influenced Montgomery Ward in its decision to prosecute. We think, however, that this was not justification for the prosecution if the jury should find that the facts and circumstances were as Mrs. Banks says they were. "What facts are sufficient to show want of probable cause in any case is, of course, a question of law for the court; but whether such facts are proved by the evidence is a question for the jury." *Kennedy v. Crouch,* 191 Md. 580, 590. We think the appellant was entitled to have the jury pass on the facts.

Where there is lack of probable cause, malice may be inferred, although the inference may be rebutted by the defendant. The question of malice, that is, the question of whether the defendant acted from other than proper motives, unlike probable cause, is a question for the jury. *Torsch v. Dell,* 88 Md. 459.

The trial court admitted the rules and regulations of Montgomery Ward showing the procedures to be followed in cases of criminal prosecution and a limitation of authority on the part of local managers. In *Julian . Goldman Stores v. Bugg,*

156 Md. 36, 38, *supra,* the Court of Appeals approved ex-
clusion of a contract defining the powers of the agent with
some minuteness and limiting his authority to bring criminal
proceedings without written authority of his employer. Chief
Judge Bond said for the Court: "* * * that the employer's
liability or lack of liability to Bugg for Brodsky's act is to be
ascertained from the scope of Brodsky's employment, without
reference to such a limitation imposed by the employer." It
is held generally that an employer cannot escape liability for
the acts of his agent by placing limitations on his authority not
known to others dealing with him nor properly inferable from
the nature of his employment. *Lister v. Allen,* 31 Md. 543.

We think the regulations were not admissible and indicate
our opinion on the point since the case must be remanded for
a new trial.

*Judgment reversed, with costs, and case
remanded for a new trial.*