# EXXON CORPORATION *v.* STUART F. KELLY

[No. 55, September Term, 1977.]

*Decided January 9, 1978.*

The cause was argued before MURPHY, C. J., and SMITH, DIGGES, LEVINE and ELDRIDGE, JJ.

*Jeffrey D. Herschman* and *Donald E. Sharpe,* with whom were *Piper & Marbury* on the brief, for appellant.

*W. Lee Harrison,* with whom were *Daniel T. Doherty, Jr.,* and *William E. Seekford* on the brief, for appellee.

DIGGES, J., delivered the opinion of the Court.

This malicious prosecution suit was generated by an application for an arrest warrant executed and sworn to by Brady Moore, a superintendent for appellant Exxon Corporation, charging Stuart F. Kelly, the appellee here and at the time an Exxon mechanic, with stealing fifteen gallons of the company's gasoline from its Dundalk garage. Trial of this tort action in the Circuit Court for Baltimore County resulted in a jury verdict awarding Kelly $1,000 in compensatory and $40,000 in punitive damages, and this appeal followed. We are asked to resolve several issues which are endemic to suits for malicious prosecution and which will determine whether the verdict may stand; concluding that, under the instructions given the jury by the trial court, it may not, we will reverse the judgment and remand the case for a new trial.

In the late summer and early fall of 1973, Exxon, in cooperation with the Maryland State Police represented by Corporal Claude O. Keen, pursued an investigation into the disappearance of Exxon products from its Dundalk terminal. That investigation was expanded to encompass allegations

that mechanics had been stealing material from a maintenance garage, located at the terminal, where large fuel tank trucks were serviced. On September 26, 1973, Brady Moore and Edward W. Anderson, both employed by Exxon in a supervisory capacity, conducted a surveillance, from partially-constructed bridges some 250 feet away, of the garage mechanics working the night shift, one of whom was appellee Kelly. With respect to the events of that evening, Moore, called by Kelly as an adverse witness, testified that he had seen Kelly take three five-gallon cans from the trunk of his automobile, fill the cans with gasoline he drained from the manifold lines of a tank truck,[1] place the cans at the back of the garage, move his car to the rear of the garage, open the trunk, make motions "that any reasonable person would take to be lifting motions" as if he were placing the cans in the trunk, close the trunk, and return the automobile to its original parking place. Anderson, also testifying at the behest of the appellee, had viewed the scene from a different vantage point and could not state exactly what Kelly did with the cans he took from his trunk. Kelly, on the other hand, while admitting that he removed the cans from his trunk and took them into the garage, as well as that he had moved his car, denied that he had ever stolen any gasoline from Exxon, testifying further that he had taken the cans to the garage dumpster and discarded them, along with the junk contained in them. He also stated that the draining of a manifold was routine if an inspection was to be conducted, and that he could not remember whether he had performed that function on the night in question. A search of Kelly's home garage two days later uncovered no material stolen from Exxon.[2]

The parties also differ in their versions of what was said during three subsequent conversations between Kelly and

1. The product carried by a tank truck, Exxon explains, may be transferred from a particular compartment of the truck to an external storage tank through the manifold lines, which are equipped with a series of valves enabling the operator to direct the flow of the product.

2. The record reveals that Kelly had performed his job satisfactorily for 17 years and that he had received some 28 awards from Exxon for suggestions submitted to the company regarding modifications in equipment and operation of the garage.

various of Exxon's management personnel concerning the alleged thefts; two of these interviews occurred on October 8, the date on which Kelly was suspended, and the third took place on October 15, the date of Kelly's termination from his employment with Exxon. Exxon insists that Kelly admitted the theft; Kelly maintains that he denied the allegations and that his statements during those talks to the effect that he had occasionally taken gasoline from manifold lines referred only to taking waste gasoline for use on the premises to wash greasy clothing. In any event Exxon, content with having terminated Kelly's employment, at first declined to bring criminal charges; however, at the insistence of Corporal Keen (who told Moore that he would be subpoenaed if he refused to make the charge voluntarily), Moore was given permission by Exxon to supply an affidavit to procure the arrest warrant which was issued on October 25, 1973. When the matter came on for trial on December 18 of that year, the assistant state's attorney in charge, after four jurors had been chosen, entered a nolle prosequi, thus abruptly ending the criminal proceeding against Kelly.

Nine months following termination of the criminal cause, Kelly filed this tort action seeking damages from Exxon, William Clinton [3] and Brady Moore for false imprisonment and slander as well as malicious prosecution. When the suit was tried before a jury beginning on April 26, 1976, on the latter two allegations, the court as a matter of law eliminated the slander count, and upon Kelly's dismissing his claim against Moore, the suit proceeded against Exxon alone, Clinton having been named a defendant only as to the slander count. When the jury's verdict in Kelly's favor was reduced to a final judgment, Exxon filed a timely appeal to the Court of Special Appeals.[4] That court affirmed the trial court's decision in all respects, after holding (1) there was sufficient evidence from which the jury could have concluded that there was no probable cause for the institution of the criminal

---

3. Clinton was an Exxon security agent who had been involved in the investigation.

4. Exxon's appeal was actually a cross-appeal, as Kelly had filed an earlier order for appeal only on the question of damages. Kelly has not sought further review in this Court of the ruling of the Court of Special Appeals affirming the trial court on this issue.

proceeding against Kelly, (2) Kelly produced sufficient evidence to justify the submission of the issue of malice to the jury, and (3) the trial court correctly instructed the jury that the nolle prosequi could be considered as evidence of lack of probable cause. *Kelly v. Exxon Corp.,* 35 Md. App. 272, 370 A. 2d 162 (1977). Since, under the circumstances present here, we do not agree that the nolle prosequi may be evidence of want of probable cause, we must reverse; however, a new trial is necessary because, even absent use of the nolle prosequi, there remains, contrary to Exxon's contention, sufficient conflicting evidence to be resolved by a jury relative to the existence of probable cause and malice.

We note initially that the principles governing a suit for malicious prosecution, whether it springs from the prosecution of a civil action or a criminal cause, are generally well-settled. While the tort is not a favorite of the law, *Siegman v. Equitable Trust Co.,* 267 Md. 309, 316-17, 297 A. 2d 758, 762 (1972); *Durante v. Braun,* 263 Md. 685, 688, 284 A. 2d 241, 242 (1971); *North Pt. Constr. Co. v. Sagner,* 185 Md. 200, 206-07, 44 A. 2d 441, 444 (1945), the cause of action remains a viable one in this State, *Durante v. Braun, supra,* the elements of which, when growing out of a criminal charge, have been enunciated by this Court on a number of occasions:

> The necessary elements of a case for malicious prosecution of a criminal charge are . . . (a) a criminal proceeding instituted or continued by the defendant against the plaintiff, (b) termination of the proceeding in favor of the accused, (c) absence of probable cause for the proceeding, and (d) "malice", or a primary purpose in instituting the proceeding other than that of bringing an offender to justice. [*Safeway Stores, Inc. v. Barrack,* 210 Md. 168, 173, 122 A. 2d 457, 460 (1956), *quoted in Durante v. Braun, supra* at 688 [243].[5]]

---

5. An additional element is required to be shown when the suit springs from a civil action: that damages were inflicted on the plaintiff by seizure of his property or other special injury. Wesko v. G.E.M., Inc., 272 Md. 192, 197, 321 A. 2d 529, 532 (1974).

The issues in the case before us involve only the sufficiency of the appellee's proof of the latter two elements.

We turn first to Exxon's contention that it was error for the trial court to instruct the jury that "the fact that the charges against [Kelly] were nol prossed by the prosecution may be considered as evidence of want of probable cause."  [6] In assessing the evidentiary effect, as regards probable cause, of the nolle prosequi in this case, we would point out as a preliminary matter that the effect of other forms of termination of the proceedings in favor of the accused is already well-established in Maryland. For example, in *Norvell v. Safeway Stores, Inc.,* 212 Md. 14, 21, 128 A. 2d 591, 594 (1957), we held that an acquittal by the jury is not evidence of want of probable cause, since the acquittal "may be based on a mere lack of proof beyond a reasonable doubt, and throws no light on the sufficiency of the evidence on which the instigator acted at the time the proceedings were instituted . . . ." *Id.* at 20 [593]. On the other hand, in *Banks v. Montgomery Ward & Co.,* 212 Md. 31, 40, 128 A. 2d 600, 605 (1957), we indicated that the discharge of an accused at the preliminary hearing of a criminal charge is evidence of lack of probable cause, since "it is the function of [a magistrate] to pass upon the sufficiency of the case against the accused to justify prosecution." *Id.* (quoting W. Prosser, *Law of Torts* § 98, at 656 (2d ed. 1955), currently § 119, at 845 (4th ed. 1971)). The rationale underlying those two rules, however, is of no definitive aid in formulating a principle by which to determine what effect should be given a nolle prosequi. This is so because, while it may be the function of the state's attorney to assess the sufficiency of the case against the accused to justify investing the State's time and money in a prosecution, as with a magistrate at a preliminary hearing, his decision to nolle prosequi a case may equally as well be based on factors which throw no light whatever on the sufficiency of the evidence on which the prosecution was

---

6. Kelly contends that Exxon may not attack the trial court's instruction in this regard, since, though objecting, it failed to state the ground for its exception before the jury retired, as required by Maryland Rule 554 d. We reject this contention, since we agree with the Court of Special Appeals that no specific ground need be stated where the record makes clear that all parties and the court understood the reason for the objection.

instituted. Thus it is not surprising that there appears to be no generally settled rule on the matter. *See* W. Prosser, *Law of Torts* § 119, at 845-46 & n. 39 (4th ed. 1971); [7] *Restatement (Second) of Torts* § 665(2) (1977); 52 Am.Jur.2d Malicious *Prosecution* § 163, at 284-85 (1970); 54 C.J.S. *Malicious Prosecution* § 38, at 1002 (1948).

We think it apparent that the evidentiary effect of a nolle prosequi must depend upon the circumstances of its entry, and our conclusion in this regard is in accord with our decision in *Norvell v. Safeway Stores, Inc., supra,* the single instance in which this Court has had occasion to consider the matter. In *Norvell,* where the plaintiff relied upon a nolle prosequi as proof of lack of probable cause, 212 Md. at 21, 128 A. 2d at 594, we found that the trial court properly withdrew the case from the jury on the ground there was no evidence of want of probable cause. Though our discussion of the matter was brief, we looked, as we must here, to the circumstances surrounding the State's decision not to prosecute, concluding that the nolle prosequi was probably due to the fact that the plaintiff had been acquitted by a jury in a related prosecution based on the same underlying facts, *id.* at 23 [595], and that it could not properly be ascribed to the state's attorney's belief in a want of probable cause at that time, "far less to evidence of a want of probable cause at the time the warrant was sworn out." *Id.* Just as the facts in *Norvell* demanded the conclusion that the nolle prosequi could not be evidence of lack of probable cause, so do the circumstances here. The assistant state's attorney in charge of Kelly's prosecution stated in open court: [8]

> [T]he State at this time will nolle prosequi the charge on my recommendation at this time because there would be a lengthy trial, Your Honor.

---

7. While the parties appear to proceed on the premise that Dean Prosser's view is that a nolle prosequi is not evidence of lack of probable cause, and we have made the same suggestion, *see* Norvell v. Safeway Stores, Inc., 212 Md. 14, 22, 128 A. 2d 591, 595 (1957), he actually indicates only that there are more cases so holding than there are to the contrary. Further confusion is added by his apparently conflicting statement by way of footnote that "[i]t is of course clear that such a dismissal, *with other facts,* may be sufficient." W. Prosser, *Law of Torts* § 119, at 846 n. 39 (4th ed. 1971) (emphasis added).

8. Maryland Rule 711 (now, with amendments effective July 1, 1977, Rule 782) provided that a nolle prosequi of an indictment may be entered only in open court.

I believe that the State could have proved the charges against the defendant probably if there was a full trial. However, under these circumstances, the jury trial, I just don't feel as a result of a lengthy trial under the circumstances as to the larceny of $6.00, Your Honor, the State would want to tie up the courts for three days.

The Court has recommended the jury would probably come back not guilty; that is the reason why the State has taken upon itself to nolle prosequi the charge and not the complaining witness.

No evidence was presented to controvert these statements made by an officer of the court.[9] Consequently, we think it incontrovertible that the nolle prosequi "cannot properly be ascribed to the State's Attorney's belief in a want of probable cause . . . ," *Norvell v. Safeway Stores, Inc., supra* at 23 [595]; thus the jury should not have been permitted, under the circumstances of this case, to consider it as evidence that Brady Moore, as Exxon's representative, lacked probable cause to institute the prosecution.

Our conclusion here is in accord with the principle expressed in section 665(2) of the *Restatement (Second) of Torts* (1977): "The abandonment of criminal proceedings by a public prosecutor acting on his own initiative after the prosecution has passed into his control, is not evidence that the private prosecutor acted without probable cause." Comment b to that section explains:

[T]he accuser cannot be prejudiced by the actions of the public prosecutor over whom he has no control save that which the prosecutor chooses to accord him. If, however, the action of the public prosecutor was at the instance of the private prosecutor or conditioned upon his consent, the inference that the

---

9. We find nothing in any of the testimony in this case that tends to discredit the statement made by the state's attorney. The testimony at most showed that he discussed the matter with Exxon officials before the nolle prosequi was entered. Without more, the jury cannot be permitted to conclude that the state's attorney misstated the facts to the trial court.

latter had no probable cause for his action in initiating the proceedings would be permissible. [10]

The Court of Special Appeals, explicitly adopting the *Restatement* view, reached a conclusion in this case contrary to that of this Court. That court's determination apparently stemmed from its belief that the question whether the state's attorney here acted on his own initiative was a jury question, since it observed that "there was evidence from which it could be argued that the nolle prosequi was entered if not at the instance of Exxon at least with its knowledge and consent." *Kelly v. Exxon Corp.,* 35 Md. App. 272, 285, 370 A. 2d 162, 170 (1977). We emphasize that the *Restatement* requires that, in order to be evidence of want of probable cause, the public prosecutor's dismissal must be "at the *instance of* the private prosecutor or *conditioned upon* his consent . . . ." Comment b *supra* (emphasis added). Thus mere "knowledge and consent" will not suffice. We reiterate our conclusion that there was insufficient evidence to controvert the statements made on the record by the state's attorney, so that a jury could not conclude that the nolle prosequi here was either entered at the instance of Exxon or conditioned upon its consent. *See* note 9 *supra.*

Although, as we have seen, the judgment must be reversed, we cannot agree with Exxon's contention that it was entitled to a directed verdict on the ground that Kelly failed to produce legally sufficient evidence either of lack of probable cause or of malice. Treating first the question of probable cause, we find the law quite clear as to its definition: "Probable cause is a reasonable ground of suspicion supported by circumstances sufficiently strong in themselves to warrant a cautious man in believing that the accused is guilty." *Banks v. Montgomery Ward & Co.,* 212 Md. 31, 39, 128 A. 2d 600, 604 (1957). It is equally clear that if the facts, and the inferences to be drawn therefrom, relied on to constitute probable cause are clear and undisputed, the question is one of law for the court; where the facts are

---

10. In respect of the latter observation by the *Restatement* authors, we would caution that it was long ago decided that in Maryland dismissal by a private prosecutor is not *in itself* sufficient evidence of lack of probable cause. Flickinger v. Wagner, 46 Md. 580, 603 (1877).

contested, however, whether they are proved is a question for the jury. *Id.* at 42 [606]; *Kennedy v. Crouch,* 191 Md. 580, 590, 62 A. 2d 582, 587 (1948). Thus when contested facts generate a jury issue, "the jury, after being instructed as to what constitutes 'probable cause,' . . . should be left to determine its presence or absence." *W. T. Grant Co. v. Guercio,* 249 Md. 181, 187, 238 A. 2d 855, 859 (1968). In this vein, we agree with Exxon that, if the jury believed the testimony of Brady Moore as to his observations of September 26, those observations, together with the subsequent conversations with Kelly from which it *could* be concluded that he was referring to stealing gasoline rather than taking it for use on the premises, would constitute probable cause for the prosecution. What Exxon overlooks in urging that a verdict be directed in its favor, however, is that since Kelly categorically denied stealing gasoline on the night in question, claiming that he had discarded in the garage dumpster the very cans into which he was accused of draining the gas, and denied as well admitting any such thefts, the jury simply may not have believed that Moore observed that which he testified to, and may have inferred that Exxon had no basis for interpreting Kelly's statements as an admission of theft.

In short, since the facts relied upon to constitute probable cause are in dispute, the jury must determine them. In this regard it should be recalled that, since Exxon maintains it was entitled to a directed verdict, it must concede the truth of all facts tending to support Kelly's right to recover, as well as all natural and reasonable inferences from those facts, even though they may be contradicted. *Tully v. Dasher,* 250 Md. 424, 440-41, 244 A. 2d 207, 217 (1968); *Pessagno v. Keyes,* 143 Md. 437, 440, 122 A. 651, 652 (1923). Furthermore, under conflicting evidence "the issues as to probable cause and malice, however great the preponderance of probability may [seem] to be on the side of [the] defendant, [are] issues of fact, not law, and under our theory and system of trials their submission to the jury [is] necessary." *Veid v. Roberts,* 200 Ala. 576, 76 So. 934, 934 (1917); *see Safeway Stores, Inc. v. Barrack,* 210 Md. 168, 173, 122 A. 2d 457, 459-60 (1956) (weight and preponderance of evidence is for triers of fact). If more

support for this conclusion is desired, the reader is referred to our decision in *Durante v. Braun,* 263 Md. 685, 690-91, 284 A. 2d 241, 244 (1971), where "despite the compelling recitation of exculpatory facts tending to show the existence of probable cause for the act of the defendants," we concluded that the trial court erred in ruling that the plaintiff had not produced sufficient evidence on the issue to go to the jury.

Finally, we must consider Exxon's remaining argument that the question whether it was actuated by malice in prosecuting Kelly should not have been submitted to the jury. It is true that since malice and lack of probable cause must concur in order to maintain an action for malicious prosecution, see *Boyd v. Cross,* 35 Md. 194, 196-97 (1872), the verdict cannot stand, whatever may be the conclusion as to probable cause, absent a showing of malice. As our predecessors have observed, however, "of these two indispensable elements the want of probable cause is the more important, *because if it be established by the proof, malice may be inferred." Owens v. Graetzel,* 149 Md. 689, 696, 132 A. 265, 267 (1926) (emphasis added).[11] We reiterated this principle in *Wesko v. G.E.M., Inc.,* 272 Md. 192, 197-98, 321 A. 2d 529, 532-33 (1974), explaining that the inference is merely a permissible one, "sometimes loosely characterized as prima facie evidence, subject to negation by proof that there was no actual malice on the defendant's part." *Id.* at 197 [532] (citations omitted). To the same effect, see 1 J. Poe, *Pleading and Practice* 148 (5th ed. H. Tiffany 1925); W. Prosser, *Law of Torts* § 119, at 848-49 (4th ed. 1971); 52 Am.Jur.2d *Malicious Prosecution* § 141, at 270 (1970); 54 C.J.S. *Malicious Prosecution* § 43, at 1007-08 (1948). Since we have repeatedly stated that the question of malice — whether the defendant acted from other than proper motives — "unlike probable cause, is a question for the jury," *Banks v. Montgomery Ward & Co.,* 212 Md. 31, 42, 128 A. 2d 600, 606 (1957); *Jannenga v. Libernini,* 222 Md. 469, 474, 160 A. 2d 795, 798 (1960) (citing cases), and since, as we have just discussed, "lack of probable cause may give rise to an inference of

11. While malice may be inferred from want of probable cause, want of probable cause cannot be inferred from any degree of malice. Kennedy v. Crouch, 191 Md. 580, 587, 62 A. 2d 582, 586 (1948).

malice, sufficient to carry the question to the jury," W. Prosser, *supra* § 119, at 849, it follows ineluctably that if the jury is permitted under the evidence here to find a lack of probable cause, as we have already decided it may, it may also, if it chooses, infer the existence of malice. Hence on the evidence as presented here it would have been error to withdraw the question of malice from consideration by the jury. *See Durante v. Braun, supra,* 263 Md. at 690-91, 284 A. 2d at 244 (despite compelling recitation of exculpatory facts by defendants tending to show probable cause, issue was for the jury, and if plaintiff's evidence were to be believed, the positiveness of defendants' identification of plaintiff, if disbelieved, may have a bearing on the issue of malice as well, and is itself a question for the jury). To the same effect, see *Jannenga v. Libernini, supra* at 473 [797-98].

Although the parties appear to agree that Exxon would not have initiated the criminal cause against Kelly had not the police officer involved in the investigation of the theft of Exxon materials insisted upon it, that insistence does not relieve Exxon of its obligation not to prosecute Kelly if it had no probable cause to believe him guilty.

> [A]ny motive other than that of instituting the prosecution for the purpose of bringing the party to justice, is a malicious motive on the part of the person who acts under the influence of it. . . . " [T]he term 'malice,' in this form of action, is not to be considered in the sense of spite or hatred . . . but . . . as denoting that the party is actuated by improper and indirect motives." If . . . a prosecution is initiated upon weak and unsubstantial ground . . . for the accomplishment of any other object, aside from the apparent object of the prosecution and the vindication of public justice, the party who puts the criminal law in motion under such circumstances lays himself open to the charge of [having been] actuated by malice. [*Johns v. Marsh,* 52 Md. 323, 332-33 (1879) (citation omitted).]

*See Jannenga v. Libernini, supra* at 472 [797]; *Restatement (Second) of Torts* § 668 (1977). Consequently, where, as here, there is evidence of want of probable cause as well as some evidence of a purpose other than that of bringing an offender to justice, there can be no doubt that the existence of malice was a question for the jury to determine. *Jannenga v. Libernini, supra* at 473 [797-98].

For the reasons here enunciated, the judgment of the Court of Special Appeals will have to be reversed.

> *Judgment of the Court of Special Appeals reversed and case remanded to it with instructions to reverse the judgment entered in the Circuit Court for Baltimore County and remand the case to that court for a new trial.*
>
> *Costs in this Court and in the Court of Special Appeals to be paid by Stuart F. Kelly.*