843 F.2d 1386
Unpublished Disposition
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
Phielding BUNDY, Plaintiff-Appellant,
v.
BEST PRODUCTS COMPANY, INC., a Virginia Corporation,
Defendant-Appellee.
 No. 87-1643.
 United States Court of Appeals, Fourth Circuit.
 Argued: Dec. 3, 1987.
Decided: April 4, 1988.
 
 Mark Eric Herman for appellant.
 Gerson Bernard Mehlman (Whiteford, Taylor & Preston, on brief), for appellee.
 Before DONALD RUSSELL and WIDENER, Circuit Judges, and HAYNSWORTH, Senior Circuit Judge.
 
 
 1
 PER CURIAM;
 
 
 2
 The plaintiff, Phielding Bundy, brought this action for malicious prosecution on March 22, 1985.[1] After discovery, the defendant, Best Products, moved for summary judgment, which the district court granted. This appeal followed, and we affirm.
 
 
 3
 In June of 1982, two of the defendant's stores in the Baltimore area cashed a total of six checks written on the account of the plaintiff. All six checks were returned marked insufficient funds. The checks had all been presented by a man claiming to be Phielding Bundy and who had presented a Maryland driver's license with that name. The two stores (hereinafter the Eudowood store and the Whitehead store) are run as separate operations within the Best chain. Each store began an investigation of the Bundy checks.
 
 
 4
 The Eudowood store sent out two inquiry letters to the plaintiff. Neither letter was answered and the bad check charges were filed by the Eudowood store in July of 1982. See Md.Ann.Code, Art. 27, Secs. 140-144 (1982). The Eudowood charges were eventually dismissed by the court. The plaintiff does not dispute the fact that the Eudowood store had probable cause to initiate that prosecution, and the actions of the Eudowood store do not form the basis of Bundy's malicious prosecution case.
 
 
 5
 The Whitehead store attempted to call the telephone number given at the time of the check cashing and found it disconnected. The Whitehead store then sent the plaintiff two certified letters. After the second letter, the plaintiff responded and told the Whitehead store that his checkbook and driver's license had been stolen. He also provided a police report number. The Whitehead store accepted this explanation and discontinued the investigation.
 
 
 6
 In July 1982, Calvin Wink, a security officer for Best's Whitehead store, reviewed the bad check files, one of which was that of Phielding Bundy. Wink was also a Baltimore County police officer. Soon after he reviewed the files, a man claiming to be Bundy came up to him while he was on duty at the police station. This man stated that his checks had been stolen and were being used in the Woodlawn area of Baltimore. The man produced a driver's license bearing Bundy's name.
 
 
 7
 Within two weeks, Wink was paged to meet with a man claiming to be Phielding Bundy at the Whitehead store. The man wanted to be photographed and to sign a statement that his checks were stolen. Wink testified the man he had seen at the police station, the man he had later seen at the Whitehead store and the man whose picture was in the bad check file were three different people. Additionally, Wink was subpoenaed to the trial of Bundy for the Eudowood bad check charges. At the first trial date (at which the trial was postponed), Wink saw the plaintiff, Bundy, and felt that he was neither the Bundy at the police station nor the Bundy whom Wink had seen at the Whitehead store. The plaintiff claims that he was the individual Wink encountered at the police station, the Whitehead store and the Eudowood trial. He also claims that he is very clearly not the person whose picture is in the bad check file at the Whitehead store.
 
 
 8
 After the postponed trial date, Wink retrieved Bundy's Whitehead bad check file and the police report it referred to. The report mentioned only the theft of a woman's purse owned by Lemuel Bundy, plaintiff's wife. The address listed on the report was different from that of the plaintiff.[2] The report made no mention of the checks or Phielding Bundy's driver's license. At that point, May or early June of 1983, the Whitehead store filed charges. Thereafter, the Eudowood charges were dismissed. Following the Eudowood dismissal, the prosecutor nol prossed the Whitehead charges. The filing of the Whitehead charges forms the basis for Bundy's malicious prosecution claim.
 
 
 9
 This diversity action is governed by Maryland law. Erie R. Co. v. Tomkins, 304 U.S. 64 (1938). While not favoring malicious prosecution actions, Maryland does recognize the tort. Exxon Corp. v. Kelly, 281 Md. 689, 381 A.2d 1146 (1978). The four required elements are:
 
 
 10
 1) a criminal proceeding instituted against the plaintiff by the defendant;
 
 
 11
 2) termination of the prosecution in favor of the plaintiff;
 
 3) absence of probable cause; and
 
 12
 4) malice or a primary purpose in instituting the proceedings other than that of bringing the offender to justice. Id. at 1149. Probable cause is measured by the facts as they appear to one defending the civil action at the time he initiated the criminal action. Brewer v. Mele, 267 Md. 437, 441, 298 A.2d, 156, 165 (1972). Under Maryland law, the underlying circumstances are themselves questions of fact. Once these circumstances have been established, whether they constitute probable cause is a question of law. Exxon, 381 A.2d, 1151. In this case, the district court granted Best's motion for summary judgment on the basis that the undisputed facts of the case established probable cause as a matter of law at the time Best instituted the Whitehead charges against the plaintiff.
 
 
 13
 As this case is before us at the summary judgment stage, our standard of review is whether the non-moving party, after an adequate time for discovery, has designated specific facts showing there is a genuine issue for trial. In the posture of this case, Best is entitled to summary judgment if Bundy cannot make a sufficient showing to make the absence of probable cause a genuine issue for trial. Fed.R.Civ.P. 56(c); Celotex v. Catrett, 54 U.S.L.W. 4775, 4777, 4778 (1986).
 
 
 14
 Even with all inferences in Bundy's favor, the district court did not err in finding that Best had probable cause on the date on which charges were filed. The following facts are not in dispute. In June of 1982, three checks drawn on Bundy's account were given to the Whitehead store by a man claiming to be Bundy and in possession of Bundy's driver's license. The checks were returned marked insufficient funds. The drawee bank made no indication of theft or forgery. The police report that Bundy offered in his defense to the bad check allegations listed neither the checks nor the license as items stolen. Other items, some of lesser value, were specifically listed. Prior to the institution of charges, no explanation was given to the Whitehead store by Bundy as to why his wife would have his checks and driver's license. Significantly, this was not a joint account. Phielding Bundy was the only name on the checks. Finally, at the time the Whitehead store filed charges, the Eudowood store charges for the same offense were still pending. These facts are sufficient to establish probable cause and thus defeat one element of and thus Bundy's whole claim.
 
 
 15
 In seeking to establish a genuine issue for trial, the plaintiff relies upon his efforts to exonerate himself prior to the filing of the Whitehead charges and the evidential inference drawn from the fact that the Whitehead charges were dropped.[3] He also calls into question the truthfulness of Calvin Wink, particularly as to how many different individuals Wink had observed claiming to be Phielding Bundy. There may well be factual dispute on these points. This factual dispute does not, however, control the disposition of this case. Even if we accept that Bundy made efforts to exonerate himself and discount the testimony of Wink as to the various men pretending to be Bundy, the remaining undisputed facts still form "... a reasonable ground of suspicion supported by circumstances sufficiently strong in themselves to warrant a cautious man in believing the accused is guilty." Banks v. Montgomery Ward & Co., 212 Md. 31, 39, 128 A.2d 600, 604 (1957).
 
 
 16
 Bundy has not established any genuine issue for trial on the element of absence of probable cause, and we conclude that the district court did not err in its entry of judgment for the defendant. The judgment of the district court is accordingly
 
 
 17
 AFFIRMED.
 
 
 
 [1]
 Originally the complaint alleged misuse of process, intentional infliction of emotional distress and negligence. The complaint was amended in July 1985 to add the malicious prosecution count. In October of 1985, the district court dismissed the original three counts of the complaint, leaving only the malicious prosecution claim. Plaintiff does not appeal from that dismissal
 
 
 [2]
 Phielding and Lemuel Bundy may have been separated during the relevant time frame
 
 
 [3]
 It is established in Maryland that the inference drawn from the dropping of charges by a private prosecutor is never strong enough by itself to establish lack of probable cause. Exxon, 381 A.2d at 1151, n. 10. Additionally, where the nolle prosequi is entered by a public prosecutor, as here, it is of no consequence on the issue of probable cause. Id. at 1150-51