**PUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

EVERETT ALVAREZ, JR.; TAMMY
ALVAREZ; MARC ALVAREZ,
Plaintiffs-Appellants,

v.

MONTGOMERY COUNTY; DOUGLAS M.
DUNCAN, in his individual and
official capacity; CAROL A.
MEHRLING, Chief of Police,
Montgomery County, in her

individual and official capacity;            No. 97-1648
JOHN P. ROMACK, PO III, in his
individual and official capacity;
ROBIN L. XANDER, PO II, in her
individual and official capacity;
LINDA S. NEUDORFER, PO I, in her
individual and official capacity;
DEANNA CHITTICK, Intern, in her
individual and official capacity,
Defendants-Appellees.

Appeal from the United States District Court
for the District of Maryland, at Greenbelt.
Peter J. Messitte, District Judge.
(CA-95-3627-PJM)

Argued: May 7, 1998

Decided: June 22, 1998

Before WILKINSON, Chief Judge, WILLIAMS, Circuit Judge, and
FRIEDMAN, United States District Judge for the Eastern District
of Virginia, sitting by designation.

_____

Affirmed by published opinion. Chief Judge Wilkinson wrote the opinion, in which Judge Williams and Judge Friedman joined.

_____

**COUNSEL**

**ARGUED:** Patrick Joseph Smith, PATRICK J. SMITH & ASSO-CIATES, Rockville, Maryland, for Appellants. Karen Federman Henry, Principal Counsel for Appeals, Rockville, Maryland, for Appellees. **ON BRIEF:** Bernadette Sweeney, PATRICK J. SMITH & ASSOCIATES, Rockville, Maryland, for Appellants. Charles W. Thompson, Jr., County Attorney, Linda B. Thall, Chief Counsel, Division of Special Projects, Rockville, Maryland, for Appellees.

_____

**OPINION**

WILKINSON, Chief Judge:

This appeal involves constitutional and state law claims by Everett, Tammy, and Marc Alvarez against several police officers employed by Montgomery County, Maryland. The Alvarezes argue principally that the officers' warrantless entry into the backyard of their home violated the Fourth Amendment. We disagree. The Fourth Amendment does not prohibit police, attempting to speak with a homeowner, from entering the backyard when circumstances indicate they might find him there; thus we conclude the district court properly granted summary judgment on the constitutional claim. We also hold that the district court properly granted summary judgment on plaintiffs' state claims.

I.

On June 24, 1995, Everett and Tammy Alvarez held a party at their home to celebrate the twenty-first birthday of their son, Marc. Marc invited approximately seventy to seventy-five people to the party. The family provided food and refreshments, including several kegs of beer. During the party, the kegs were left unattended on the back

patio. Guests congregated on the back patio and in an adjacent recreation room.

During the evening, the Montgomery County police received a complaint of an underage drinking party in the neighborhood. The 911 call was announced over the police radio. Responding to the call, Officer John P. Romack, a member of the Department's Alcohol Enforcement Unit, met several other officers and drove toward the area. As he proceeded down Sunrise Drive, Officer Romack noticed multiple alcohol containers in front of the Alvarezes' home and several cars parked there in an "odd" fashion.

Suspecting that they had located the underage drinking party, the officers exited their cruisers. While the other officers waited by the driveway, Officer Romack approached the front door intending to notify the Alvarezes of the complaint and to request that no one drive away from the party while intoxicated. When Officer Romack reached the front stoop, another officer noticed a sign indicating the party was around back and informed Officer Romack about it. The sign, affixed to a lamppost in the front driveway, read "Party In Back"; an arrow on the sign pointed toward the backyard. As it had rained earlier in the day, Everett Alvarez had posted the sign so guests would go around back rather than track mud through the house. Without knocking, Officer Romack walked away from the front door, read the sign, then entered the backyard with the other officers.

Once in the backyard, the officers saw several guests, and Officer Romack asked to speak with the party's host or the homeowner. While waiting, he observed Ashley Manning, who appeared to be underage, drinking what he believed to be beer from a cup. Officer Romack asked Ashley her age; she responded that she was twenty-one years old. Officer Romack then asked to see her identification; Ashley produced a driver's license which Officer Romack immediately suspected to be fictitious.

At this point, Marc Alvarez confronted Officer Romack, identifying himself as the party's host and demanding to know why the officers were at the house. Officer Romack explained that they were responding to a complaint of underage drinking and that Ashley had just given him a false identification. Marc swore at Officer Romack,

3

so the officers returned to the front of the home with Ashley to verify whether her license was fictitious.

In front of the Alvarezes' home, Ashley admitted that she was only nineteen years old and that Marc, knowing her age, had invited her to the party. Everett Alvarez then came to the front of the house, and Officer Romack told him that he wished to speak to his son. Everett went inside and explained to Marc that the officers wanted to talk to him. Finding the situation "ridiculous," Marc initially was reluctant to go, but his father soon persuaded him to return outside. Once outside, Marc admitted that he knew Ashley. Officer Romack then issued Marc a citation for furnishing an alcoholic beverage to a person under twenty-one years of age. See Md. Ann. Code art. 27, § 401A. At a trial on the citation, a judge granted Marc's motion for judgment of acquittal and entered a verdict of not guilty.

Marc and his parents subsequently sued Montgomery County, county officials, and several police officers, alleging constitutional violations under 42 U.S.C. § 1983 and raising pendent state claims. The district court dismissed the claims. On appeal, the Alvarezes argue only that the officers' warrantless entry into their backyard violated the Fourth Amendment; Marc Alvarez also presses several Maryland tort claims.

II.

We first address the Alvarezes' constitutional claim. They maintain that the officers' warrantless entry into their backyard constituted an unreasonable search. The district court found that the officers did not violate the Fourth Amendment and, alternatively, that they were entitled to qualified immunity.

A.

Not every police encounter with a person or approach to a building implicates the Fourth Amendment. For example, police may question a person without committing a seizure where "a reasonable person would feel free to decline the officers' requests or otherwise terminate the encounter." Florida v. Bostick, 501 U.S. 429, 436 (1991); see also

4

United States v. Wilson, 895 F.2d 168, 170-71 (4th Cir. 1990) (per curiam). Similarly, police may approach a building, including the front entranceway to a residential dwelling, without committing a search where a person lacks a reasonable expectation of privacy in the area. E.g., United States v. Taylor, 90 F.3d 903, 908-09 (4th Cir. 1996); United States v. Jackson, 585 F.2d 653, 660 (4th Cir. 1978); see generally 1 Wayne R. LaFave, Search and Seizure § 2.3(c), at 483-84 & nn.78-85 (3d ed. 1996) (collecting cases).

The Alvarezes concede that some warrantless police approaches to residential dwellings do not violate the Fourth Amendment. Nonetheless, they propose a rule requiring police under all circumstances to knock at the front door before attempting to contact the occupant elsewhere on the premises. They maintain that the officers' failure in this case to knock at the front door before entering the backyard constituted an unreasonable search.

We decline to adopt the inflexible approach urged by the Alvarezes. The textual "touchstone of the Fourth Amendment is reasonableness." Florida v. Jimeno, 500 U.S. 248, 250 (1991) (citing Katz v. United States, 389 U.S. 347, 360 (1967)). When applying this basic principle, the Supreme Court has "consistently eschewed bright-line rules, instead emphasizing the fact-specific nature of the reasonableness inquiry." Ohio v. Robinette, 117 S. Ct. 417, 421 (1996).

In line with this reasonableness approach, this circuit has permitted law enforcement officers to enter a person's backyard without a warrant when they have a legitimate law enforcement purpose for doing so. In United States v. Bradshaw, for example, we held that federal agents were "clearly entitled" to go onto a defendant's premises in order to talk to him. 490 F.2d 1097, 1100 (4th Cir. 1974). We also observed that one of the agents had not "exceeded the scope of his legitimate purpose for being there by walking around to the back door when he was unable to get an answer at the front door." Id. Though the agent later violated the Fourth Amendment by straying from this legitimate law enforcement purpose, Bradshaw expressly approved his warrantless entry into the backyard in an effort to contact the defendant.

Other circuits likewise have found that the Fourth Amendment does not invariably forbid an officer's warrantless entry into the area

5

surrounding a residential dwelling even when the officer has not first knocked at the front door. For example, in United States v. Daoust, the First Circuit held that police officers, who found the front door of the defendant's house inaccessible, did not violate the Fourth Amendment when they went around to the back. 916 F.2d 757, 758 (1st Cir. 1990). The court there reasoned that "[a] policeman may lawfully go to a person's home to interview him" and if the front door is inaccessible "there is nothing unlawful or unreasonable about going to the back of the house to look for another door, all as part of a legitimate attempt to interview a person." Id. (citations omitted). Daoust thus supports the view that officers who seek to talk to the occupant of a home do not necessarily violate the Fourth Amendment by entering the backyard of a dwelling although they have failed to knock at the front door. Several circuits similarly have held that an officer's warrantless entry of areas other than a residence's front entranceway does not always violate the Fourth Amendment. E.g. , United States v. Garcia, 997 F.2d 1273, 1279-80 (9th Cir. 1993) (entering back porch of apartment); United States v. Anderson, 552 F.2d 1296, 1299-1300 (8th Cir. 1977) (entering back porch of home).

B.

Applying these principles, we conclude that the officers did not violate the Fourth Amendment. Their initial entry into the backyard was not unreasonable. And the officers' conduct after they entered the backyard did not exceed their legitimate purpose for being there.

The officers' entry into the backyard satisfied the Fourth Amendment's reasonableness requirement. They were responding to a 911 call about an underage drinking party and, based on the alcohol containers and the awkwardly parked cars, believed they had found the party. They entered the Alvarezes' property simply to notify the homeowner or the party's host about the complaint and to ask that no one drive while intoxicated. Thus, like the agents in Bradshaw, the officers in this case had a "legitimate reason" for entering the Alvarezes' property "unconnected with a search of such premises . . . ." 490 F.2d at 1100. In furtherance of this purpose, they obviously could approach the front door in an attempt to contact the Alvarezes. See, e.g., Taylor, 90 F.3d at 909. And in light of the sign reading "Party In Back" with an arrow pointing toward the backyard, it surely was

6

reasonable for the officers to proceed there directly as part of their effort to speak with the party's host. See Daoust, 916 F.2d at 758; Anderson, 552 F.2d at 1300; cf. Bradshaw, 490 F.2d at 1100.

Nor did the officers' conduct after they had entered the backyard violate the Fourth Amendment. The intrusion was minimal. Officer Romack's request to speak with the homeowner or the party's host simply was part of the officers' legitimate purpose for entering the Alvarezes' property. The officers never came into physical contact with anyone while in the backyard. And Officer Romack clearly could ask Ashley Manning for her identification and investigate further once she had produced one which he knew to be fictitious. See INS v. Delgado, 466 U.S. 210, 216 (1984); United States v. Analla, 975 F.2d 119, 124 (4th Cir. 1992); see also Md. Ann. Code art. 27 § 400B (prohibiting individuals under twenty-one years old from possessing documentation falsely identifying their age).

Though we conclude the officers' conduct comported with the Fourth Amendment, we reiterate that the area within the curtilage of the home "typically is `afforded the most stringent Fourth Amendment protection.'" Taylor, 90 F.3d at 908 (quoting United States v. Martinez-Fuerte, 428 U.S. 543, 561 (1976)). It was not unreasonable, however, for officers responding to a 911 call to enter the backyard when circumstances indicated they might find the homeowner there. Thus, the officers did not violate the Fourth Amendment, and the district court properly granted summary judgment on the Alvarezes' constitutional claim.*

III.

We turn next to Marc Alvarez's tort claims under Maryland law. These include trespass, false imprisonment, and malicious prosecution. The district court granted the officers summary judgment on these claims.

Marc argues that the officers' unauthorized entry into the backyard constituted a trespass under Maryland law. We disagree. "It is not a

_____

*Because we conclude that the officers did not violate the Fourth Amendment, we need not address their claim of qualified immunity.

trespass for an officer of the law to go upon another's premises in the line of his duty . . . ." Heinze v. Murphy , 24 A.2d 917, 922 (Md. 1942); see also Gardner v. State, 251 A.2d 901, 906-07 (Md. Ct. Spec. App. 1969). Here the officers clearly acted in the line of duty. They entered the Alvarezes' property in response to a 911 call about an underage drinking party. At no time did they deviate from this legitimate law enforcement purpose. Because the officers' conduct falls squarely within this recognized defense under Maryland law, Marc's trespass claim must fail.

Marc next maintains that he was falsely imprisoned when Officer Romack requested to speak with him in front of his parents' home and then cited him for furnishing an alcoholic beverage to Ashley Manning. We are unpersuaded. "[T]he necessary elements of a case for false imprisonment are a deprivation of the liberty of another without his consent and without legal justification." Montgomery Ward v. Wilson, 664 A.2d 916, 926 (Md. 1995) (quoting Great Atl. & Pac. Tea Co. v. Paul, 261 A.2d 731, 738 (Md. 1970)) (citations omitted). In this case, the evidence does not show that Marc was ever deprived of his liberty. It is undisputed that no officer ever touched Marc. Indeed, Marc admitted this fact in his deposition:

> Q. Did you ever touch or come into physical contact with any of the defendants?
>
> A. No.

Furthermore, the encounter between the officers and Marc was consensual. Marc went outside at the request of his father, not in response to an officer's show of authority. As Everett Alvarez explained, "[Marc is] respectful, he does basically what I tell him." Marc's response to his father's request does not render his decision to go outside nonconsensual. Moreover, Officer Romack clearly had legal justification to request to speak with Marc, the party's host, for he had observed a nineteen year-old consuming a beverage at Marc's party. See Ashton v. Brown, 660 A.2d 447, 472 (Md. 1995). Because Marc has failed to create a triable issue with respect to the essential elements of his false imprisonment claim, that too must fail.

Finally, Marc contends that issuing the citation constituted a malicious prosecution. We disagree. "One of the elements of malicious

8

prosecution which a plaintiff has the burden of proving is the absence of probable cause for the underlying criminal proceeding." Palmer Ford, Inc. v. Wood, 471 A.2d 297, 301-02 (Md. 1984) (citing Exxon Corp. v. Kelly, 381 A.2d 1146, 1149 (Md. 1978)); see also Montgomery Ward, 664 A.2d at 922. Probable cause does not require evidence sufficient to convict a person but only "a reasonable ground of suspicion supported by circumstances sufficiently strong in themselves to warrant a cautious man in believing that the accused is guilty." Palmer Ford, 471 A.2d at 302 (citations omitted); see also Kimbrough v. Giant Food Inc., 339 A.2d 688, 693 (Md. Ct. Spec. App. 1975). Marc's evidence fails to show that Officer Romack lacked probable cause to issue the citation. Under the circumstances, Officer Romack had a reasonable ground to suspect that Marc, knowing Ashley to be only nineteen, had furnished her an alcoholic beverage in violation of Maryland law. See Md. Ann. Code art. 27, § 401A.

Furthermore, to survive summary judgment on the malicious prosecution claim, Marc also must create a triable issue over whether the officers acted with malice in initiating the criminal proceedings. Montgomery Ward, 664 A.2d at 922; Exxon Corp., 381 A.2d at 1149. "[T]he `malice' required for malicious prosecution consists of a wrongful or improper motive in initiating legal proceedings against the plaintiff." Montgomery Ward, 664 A.2d at 924. Marc has advanced no evidence that the officers were acting out of a wrongful or improper motive. The record in this case simply shows that the officers were fulfilling their law enforcement duties in citing Marc. Because Officer Romack had probable cause to issue the citation and no evidence suggests the officers acted maliciously, the district court properly granted summary judgment on Marc's malicious prosecution claim.

IV.

For the foregoing reasons, we affirm the judgment of the district court.

AFFIRMED

9