[Cite as *Stout v. Columbia Gas of Ohio, Inc.*, 2021-Ohio-609.]

# IN THE COURT OF APPEALS OF OHIO
## SECOND APPELLATE DISTRICT
## CLARK COUNTY

| | | |
|---|---|---|
| WILLIAM R. STOUT | : | |
| | : | |
| Plaintiff-Appellant | : | Appellate Case No. 2020-CA-42 |
| | : | |
| v. | : | Trial Court Case No. 2017-CV-131 |
| | : | |
| COLUMBIA GAS OF OHIO, INC., et al. | : | (Civil Appeal from |
| | : | Common Pleas Court) |
| Defendants-Appellees | : | |
| | : | |

. . . . . . . . . . .

# O P I N I O N

Rendered on the 5th day of March, 2021.

. . . . . . . . . . .

JONATHAN HOLLINGSWORTH, Atty. Reg. No. 0022976, 6494 Centerville Business Parkway, Centerville, Ohio 45459
        Attorney for Plaintiff-Appellant

PATRICK J. JANIS, Atty. Reg. No. 0012194, MATTHEW R. RECHNER, Atty. Reg. No. 0074446, & SARAH MANCUSO, Atty. Reg. No. 0096589, 124 West Main Street, Troy, Ohio 45373
        Attorneys for Defendants-Appellees

. . . . . . . . . . . .

DONOVAN, J.

{¶ 1} William R. Stout appeals from the trial court's entry of summary judgment in favor of Columbia Gas of Ohio Inc. ("CGO"), Weltman, Weinberg & Reis Co., L.P.A. ("the law firm"), and its attorney Amanda Yurechko (collectively, "Defendants"), and its denial of Stout's motion for summary judgment. We hereby affirm the judgment of the trial court.

{¶ 2} On March 3, 2017, Stout filed a verified complaint against Defendants, alleging abuse of process, defamation, violations of the Fair Debt Collection Practices Act and the Consumer Sales Practices Act, and civil conspiracy.[1] The complaint stated that CGO previously had filed a complaint against Stout in Clark C.P. No. 2016-CV-162, which had alleged that Stout owed CGO $27,300.28 for gas supplied at 501 S. Wittenberg Avenue in Springfield. In his complaint in this case, Stout asserted that he was "not a customer of [CGO] receiving gas services" at the Wittenberg Avenue address, that the gas bill attached to CGO's complaint in Case No. 2016-CV-162 identified CGO's customer as "Inside Out," and that CGO had billed Inside Out at the Wittenberg address (rather than Stout) demanding payment of the balance.

{¶ 3} Stout's complaint stated that, at all relevant times, Stout was not a CGO customer and his address was 515 S. Fountain Avenue in Springfield. Stout's complaint further stated that: 1) CGO's complaint in the previous case had alleged that Stout was "[doing business as] Inside Out"; 2) Inside Out was "not an entity registered in the State of Ohio"; 3) a "cursory review" of the records of the Ohio Secretary of State, which are available online, "irrefutably demonstrates that Inside Out is an Ohio corporation for non-

---

[1] Only Stout's claims for abuse of process, defamation, and civil conspiracy are the subjects of his appeal.

profit (entity number 1039846)," which was formed as Resurrected Life Ministries in 1998 and changed its name to Inside Out in 2002; 4) Inside Out was a corporation "in good standing" at the time CGO filed its lawsuit against Stout; and 5) the Secretary of State's records reflect that Inside Out's business address was 501 S. Wittenberg Avenue, that same address that appeared on the disputed account with CGO.

{¶ 4} Stout's complaint further alleged that, prior to and since CGO's lawsuit against Stout, CGO and its attorney Yurechko had repeatedly been advised of the "undeniable fact" that Inside Out, with whom CGO had a service agreement, was "an Ohio corporation for non-profit and that it [was] not a fictitious name used by Plaintiff." According to the complaint, the Defendants had "propounded discovery requests upon [Stout], improperly seeking information and documents from [him] relating to Inside Out and Inside Out Youth Homes under the guise that Defendants are trying to ascertain [Stout's] ownership or membership interest in either or both entities," when CGO had produced no evidence in the 2016 litigation to establish Stout's personal liability for gas services rendered at 501 S. Wittenberg Avenue. Further, the complaint stated that Defendants, individually and collectively, had "pursued Stout on this debt because they believe[d] that the underlying transaction giving rise to the debt and subsequent lawsuit was personal in nature," that Defendants had refused to dismiss their suit against Stout, and that he had incurred, and continued to incur, "substantial legal fees and expenses defending himself in a frivolous and meritless lawsuit."

{¶ 5} Count I of Stout's complaint, alleging abuse of process, states in part:

18. Defendants set in motion a legal proceeding in an attempt to accomplish an ulterior purpose for which it was not designed, i.e. attempting

to have Plaintiff pay Inside Out's gas bill, after Defendants ha[d] been given proof that Plaintiff is not [CGO's] customer and is otherwise not legally liable on the account/debt for services rendered at 501 S. Wittenberg Ave.

19.   As such, Defendants have attempted, and continue to attempt, to achieve through use of the court that which the court is powerless to order.

{¶ 6} CGO's 2016 complaint against Stout was attached to Stout's complaint as Exhibit A.   CGO's complaint included the following pertinent statements:

2.   Defendant, William Stout dba Inside Out, operated, used, occupied, and/or conducted activities at 501 S[.] Wittenberg Ave[.], Springfield, OH 45506 ("Property") and benefitted from Plaintiff's supply of gas service to the Property.

3.   Upon information and belief, "Inside Out" is not an entity registered in the State of Ohio and as such Defendant, William Stout, is personally liable acting on its behalf under Ohio Agency Law.

4.   Defendant, William Stout dba Inside Out, is indebted to Plaintiff, [CGO], for gas supplied to the Property on the account established for service and/or pursuant to unjust enrichment.

5.   Defendant, William Stout dba Inside Out, is indebted to Plaintiff [CGO], for gas supplied to Defendant on the Property in the amount of $27,300.28.

Attached to CGO's complaint was a gas bill in the amount of $27,300.28, due by July 14, 2015, which identified "Inside Out" as the customer at the Wittenberg Avenue address.

{¶ 7}  Also attached to Stout's complaint as Exhibit B was a State of Ohio Certificate with a charter/registration number of 1039846.   The certificate stated: "It is

hereby certified that the Secretary of State has custody of the business records for Inside Out and, that said business records show the filing and recording of: Domestic/Reinstatement 201133200601." The following page stated that Inside Out was "cancelled" on October 27, 2011 and reinstated on November 18, 2011.

{¶ 8} On April 3, 2017, Defendants filed a motion to dismiss Stout's complaint with prejudice for failure to state a claim upon which relief can be granted. Defendants asserted that Stout lacked standing to raise these claims, because "he was never sued in the capacity in which he now seeks to bring this action"; specifically, Defendants alleged that Stout was only liable for the debt "to the extent he was acting in an agency capacity for 'Inside Out' when the debts were incurred." Defendants asserted that "probable cause [was] an essential element of an abuse of process claim," and Stout's failure to allege probable cause was fatal to his claim. Defendants also asserted that the defamation claim was barred by the doctrine of absolute privilege and that there was no "underlying unlawful act" to support Stout's claim for civil conspiracy.

{¶ 9} Stout filed a memorandum in opposition to Defendants' motion to dismiss, and Defendants then filed a reply brief. On October 12, 2017, the trial court overruled the motion to dismiss without any analysis. Defendants subsequently filed an answer to Stout's complaint.

{¶ 10} On April 23, 2018, Defendants sought a protective order to prevent their depositions from going forward; Stout opposed the motion. On May 18, 2018, the court consolidated Case Nos. 2016-CV-162 and 2017-CV-131; the matter was thereafter assigned to a different judge.

{¶ 11} On July 1, 2020, Defendants filed a motion for summary judgment; an

affidavit from Yurechko was attached to the motion, but it was not signed or notarized. Yurechko's affidavit stated that she had been retained by CGO to recover an unpaid account in the amount of $27,300.28, in the name of "Inside Out." Yurechko averred that she then took the following actions: 1) she reviewed CGO's records, which "revealed contacts with the names William Stout and Peggy Foley," 2) she performed a Google search that led her to the website for "Inside Out Youth Homes," which listed William Stout and Peggy Foley as officers and listed an email address of @insideoutyouth.org, 3) she searched the Ohio Secretary of State's website and found the corporation "Inside Out Youth Homes," and 4) she sent a demand letter to Inside Out Youth Homes.

{¶ 12} According to Yurechko's affidavit, she received communication from William Stout and an attorney on his behalf, who stated that "Inside Out Youth Homes" was not the correct entity, and that "Inside Out" itself was also a corporation with charter number 1039846. Yurechko averred that CGO's records had a contact number for "Inside Out" of 937-525-9953; she attempted to contact Bill Stout at this number and got a voicemail for Springfield Real Estate. CGO's "client notes" also showed contact from the 937-525-9953 number, which was listed on the website for Inside Out Youth Homes.

{¶ 13} Yurechko's affidavit further stated that additional investigation in response to her communication with Stout revealed that CGO had a third account in the name of "Inside Out" with a service address of 535 South Fountain in Springfield, which was the address used by Inside Out Youth Homes according to Stout and the Inside Out Youth Homes website. Yurechko averred that CGO's account for this address was in the name of "Inside Out" and was paid for by checks drawn on accounts of Inside Out and Springfield Real Estate. "Inside Out Youth Homes, though using the gas service at this

location, did not put the gas service in its name"; rather, the account at that property at that time was in the name of Springfield Real Estate.

{¶ 14} Yurechko also averred that, before filing the complaint against Stout, she was aware that Stout "had an ownership role in all the alleged entities"; through a search of the Ohio Secretary of State website, she had found that "Inside Out" was used as all or part of the name by 75 entities in Ohio, and that "3 entities had registered the name 'Inside Out' specifically."

{¶ 15} Yurechko's affidavit stated that she made a final attempt to resolve this matter prior to filing a lawsuit by email dated January 11, 2016. In that email, she offered to "make arrangements with any entity that wanted to step forward and take over the bill," and that it did not matter to her who paid the bill as long as it got paid. The email was attached as Exhibit C.

{¶ 16} Finally, Yurechko averred that "given the confusion about the status and existence of several entities operating with similar names, and using the resources and names of the entities interchangeably," she believed she had had a good faith basis to file suit against William Stout, doing business as Inside Out, under Ohio agency law.

{¶ 17} Also on July 1, 2020, Stout filed a motion for summary judgment. Stout argued that, for more than three years, Defendants had refused to dismiss the 2016 lawsuit against him despite knowing that he was not the proper party. Stout argued that he had incurred substantial legal fees defending against the frivolous action for more than three years and that he was entitled to summary judgment on his claims arising out of Defendants wrongful collection efforts against him in the 2016 CGO litigation.

{¶ 18} Further, Stout asserted that Defendants had filed suit against him "because

of some unfounded belief that they had probable cause to do so." He argued that the discovery conducted by Defendants during the 2016 CGO litigation "further demonstrate[d] the perverted nature of their action." According to Stout, Defendants' "position was that they were entitled to discover [his] ownership or membership interest in particular entities," although that subject "had nothing to do with" CGO's claim against him "for contractual liability and/or damages."

{¶ 19} Regarding defamation, Stout asserted that there was no dispute that the facts set forth in CGO's 2016 complaint were "objectively false" and "patently defamatory" and that he had incurred substantial fees and expenses defending himself in a frivolous and meritless lawsuit. Regarding civil conspiracy, Stout asserted that Defendants "formed a malicious combination to do the aforementioned unlawful acts."

{¶ 20} Stout attached his own affidavit to his motion for summary judgment, which stated in relevant part:

2. Inside Out is an Ohio Corporation for non-profit (entity number 1039846) that was originally formed as Resurrected Life Ministries in 1998 and changed its name to Inside Out in 2002.

3. Inside Out is a tax-exempt public charity and a Christian organization that, at the times relevant hereto, operated a community center, meal preparation facility and childcare center at 501 South Wittenberg Avenue in Springfield, Ohio.

4. I am the founder of Inside Out. I served as the Executive Director of Inside Out up to November 21, 2012, when Cathy Ernst was appointed to the position of Executive Director. Thereafter, I served as the

President and Chairman of the Board of Inside Out until February 12, 2019. Since then, I associate with Inside Out solely on a volunteer basis, and I am no longer an officer or board member of the corporation.

5. I have never done business as "Inside Out" or otherwise used "Inside Out" as a trade name or fictitious name for myself.

6. Inside Out Youth Homes is an Ohio corporation for non-profit (entity number 1699073) that was formed in 2007.

7. I am the founder of Inside Out Youth Homes.

8. Inside Out Youth Homes is a nonprofit organization engaged in providing decent affordable housing to low and moderate income families, ending neighborhood blight by rehabilitating vacant and distressed homes, and helping disadvantaged people learn rehab skills working on homes, and has locations in Springfield and Lorain, Ohio, but is not and never was located at 501 South Wittenberg Avenue in Springfield, Ohio.

9. Inside Out Youth Homes and Inside Out are legally and factually separate and distinct organizations, and formed under the laws of the State of Ohio.

10. [CGO] provided gas service to Inside Out at 501 South Wittenberg Avenue, Springfield, Ohio, since April of 2006. At the time this service started, Inside Out Youth Homes did not yet exist. [CGO] has also provided gas service to Inside Out Youth Homes at numerous addresses, which accounts are in good standing. Inside Out Youth Homes has never owned or leased the property at 501 South Wittenberg Avenue, Springfield,

Ohio, and has never assumed any legal responsibility for gas services associated with the operation of Inside Out at 501 South Wittenberg Avenue, Springfield, Ohio.

11.   I am not now and I have never been a party to any contract with [CGO] for gas services provided at 501 South Wittenberg Avenue, Springfield, Ohio.

12.   I have never been a guarantor or otherwise served as a surety for the payment of any bills by [CGO] with respect to gas services provided at 501 South Wittenberg Avenue, Springfield, Ohio.

13.   I have never assumed legal responsibility in my individual capacity for the payment of gas services provided by [CGO] to Inside Out at 501 South Wittenberg Avenue, Springfield, Ohio.

* * *

20. Notwithstanding the April 17, 2019 dismissal of the [CGO] litigation, I incurred substantial legal fees defending against a frivolous action against me, the duration of which lasted no less than three years.

21.   At no time did [CGO] or its counsel ever provide any evidence to explain or justify bringing suit against me in my personal capacity. * * *

{¶ 21} Several items were attached to Stout's affidavit: 1) August 13, 2015 correspondence from Yurechko to Inside Out Youth Homes requesting payment for Inside Out's gas bill for services rendered at 501 S. Wittenberg Avenue; 2) Stout's September 11, 2015 email response, which informed Yurechko, in part, that Inside Out Youth Homes Inc. and Inside Out were distinct legal corporations; 3) an October 27, 2015

correspondence from Yurechko to Inside Out Youth Homes, which included a copy of the complaint against Inside Out Youth Homes for filing in Clark County Municipal Court asserting a claim for unpaid debt for gas services at the Wittenberg Avenue address; 4) a November 17, 2015 email correspondence from Stout to Yurechko asserting that Inside Out Youth Homes was not obligated to pay Inside Out's gas bill, that Stout was connected to both organizations and was "willing to discuss the matter," but only with respect to Inside Out, not Inside Out Youth Homes; 5) a January 4, 2016 correspondence from Stout to Yurechko repeating Stout's assertions above and requesting all evidence Yurechko had indicating that Inside Out Youth Homes should be responsible for this account; and 6) Yurechko's January 11, 2016 email to Stout stating that it did not matter to her which entity paid, so long as the bill got paid.

{¶ 22} Stout's motion for summary judgment also included an affidavit from Jonathan Hollingsworth, Stout's attorney, and additional email correspondence.

{¶ 23} On July 2020, CGO filed a motion for a protective order to prevent depositions, and Stout opposed the motion.

{¶ 24} In July 2020, Stout also filed a memorandum in opposition to CGO's motion for summary judgment. Stout asserted that he was neither the real party in interest nor an appropriate defendant in the action commenced by CGO in 2016. Stout asserted that he filed his complaint against CGO "to seek legal redress for the ongoing efforts of a large corporation and its attorneys to force him to pay a debt that he [did] not owe." Stout asserted that CGO maintained its lawsuit against him even after it had notice that he was not the proper party, with "the ulterior motive" of gaining access to details related to Stout's ownership of various entities which were wholly unrelated to CGO's claim.

{¶ 25} Stout asserted that CGO's refusal to dismiss the complaint against him was indicative of its attempt to "gain something other than that which the Court has to power to order," and that because Defendants voluntarily dismissed the litigation related to the CGO bill in 2020, the issue was "never expressly ruled upon," despite "the quintessential rule of contract law that a party may not be liable for breach of a contract to which he is not a party."

{¶ 26} According to Stout, Defendants took the position that he was "*personally* liable" for the obligations of Inside Out because Inside Out did *not* exist as a separate and distinct legal entity, "and he was a sole proprietor doing business under the fictitious name of Inside Out.   But, to the contrary, Stout asserted that Inside Out did exist as a separate legal entity and that he therefore was not personally liable for its obligations.   He also asserted that Defendants knew of Inside Out's distinct and separate legal status under Ohio law.   Moreover, Stout asserted that Yurechko's affidavit was not competent evidence for purpose of summary judgment.

{¶ 27} With regard to his abuse of process claim, Stout contended that summary judgment should have been entered in his favor because Defendants "employed a legitimate process (i.e., a lawsuit) for a legitimate purpose (i.e., to collect for gas services rendered to Inside Out), in an improper manner (i.e. maintaining a protracted action against [one] who was not legally responsible for the debt)."   He claimed that Defendants acted intentionally and maliciously in an effort to get Stout to pay Inside Out's gas bill, notwithstanding that he was not responsible for it.   He also asserted that Yurechko "acted in pursuit of her own objectives, in derogation of [her] ethical duties," and to Stout's detriment.

**{¶ 28}** Regarding his defamation claim, Stout asserted that Defendants "published false, defamatory statements about [him]" in the CGO litigation, which harmed his reputation insofar as he was alleged to owe on considerable debt that he did not owe. Stout asserted that the "doctrine of absolute privilege" applied only if the defamatory statement bore some reasonable relation to the proceedings in which it appeared, which had not been the case here. He claimed that the statements made about him in the CGO litigation were not reasonably related to the proceedings because he (Stout) was not a customer of CGO receiving gas service at 501 S. Wittenberg Avenue, while Inside Out, which was listed as the customer at that address, was not even named in the litigation.

**{¶ 29}** Regarding his conspiracy claim, Stout asserted that there was no dispute that CGO, a corporate entity under Ohio law, "could not have filed the lawsuit against [him] in Case No. 16 CV 162 absent conspiring" with Yurechko and her law firm. He contends that, because an attorney's knowledge is imputed to the client under Ohio law, CGO learned that Stout was not the appropriate party to the case when when Yurechko became aware of that fact in 2015. According to Stout, given that CGO continued to pursue the debt collection activity through its attorneys for more than three years thereafter, knowing such action to be illegal, established a conspiracy. Stout asserted that the Defendants "willful[ly] turn[ed] * * * a blind eye to the factual truth of the matter" when they were told and given documentation that Inside Out was an Ohio Corporation in the months prior to the filing of the 2016 complaint.

**{¶ 30}** On July 13, 2020, Stout filed a motion to strike the unsigned and unnotarized affidavit of Yurechko, which had been attached to Defendants' motion for summary judgment. Shortly thereafter, Defendants opposed the motion to strike

Yurechko's affidavit, asserting that on July 1, 2020, when Defendants' motion for summary judgment was filed, she had been in quarantine due to the Coronavirus and unable to sign the affidavit and have it notarized. Defendants asserted that Yurechko's affidavit had been filed with the Court as "an Exhibit Errata," that Defendants could "file the affidavit in opposition to [Stout's] Motion for Summary Judgment, and thus it [was] properly before the Court as evidence for the Defendants' Motion for Summary Judgment." A signed and notarized copy of Yurechko's affidavit was attached to Defendants' response.

{¶ 31} On July 27, 2020, Defendants filed a reply in support of their motion for summary judgment. Defendants asserted that, notably, Stout's memorandum in opposition to Defendant's motion for summary judgment did not dispute the facts stated therein, namely that attorney Yurechko had a good faith belief that there were issues which would lead to the identification of William Stout dba Inside Out as a proper defendant to the underlying action by CGO. Defendants noted that their motion for summary judgment "detail[ed] each of these facts, not the least of which [was] the interchangeable use of the name 'Inside Out' and 'Inside Out Youth Homes' by representatives calling on the subject accounts, the use of the names of the individuals calling on the account of 'Inside Out' on the website as employees of 'Inside Out Youth Homes,' the fact that 75 entities used a version of the name 'Inside Out' and at least 2 used the actual name 'Inside Out.' " Further, Defendants contended that Stout "manufactured the confusion * * * by allowing employees of various entities to act on an account" while claiming that it was the responsibility of only one of the entities, and that Defendants were not required to pursue only one entity based on Stout's or his attorney's

assertion that that should be the liable party.

{¶ 32} Defendants pointed out that, although Stout claimed it was "readily observable" that Defendants'' had named the wrong party in the 2016 complaint, the court did not agree, because it denied Stout's motion for judgment on the pleadings or for sanctions and allowed discovery aimed at "obtain[ing] information on the interplay between the entities and [Stout's] liability under Ohio agency law." Stout then "refused to provide the requested information about the interplay between the companies," and a motion to compel filed by CGO was granted. After Stout again refused to provide information in discovery, CGO chose to dismiss its complaint under Civ.R. 41, as was its right. According to Defendants, there was no basis for the court to infer wrongdoing as a result of the dismissal, as Stout suggested, and the trial court did not need to resolve the question whether Stout could be held liable for the CGO debt at issue in the 2016 case; "[t]he only issue in this case is whether Defendants can be held liable under theories pursued by [Stout] in this case."

{¶ 33} Regarding Stout's abuse of process claim, Defendants asserted that Stout failed to allege a necessary element: "i.e. that the [CGO] lawsuit had been set in motion in proper form and with probable cause." Instead, Defendants assert that Stout "alleges there was no legal or factual basis to bring the lawsuit." Defendants argued that Stout's claim that the discovery process was a "fishing expedition" and had no basis ignored the trial court's specific ruling that Stout was required to provide the discovery Defendants sought. Defendants asserted that Stout's argument that pursuing discovery compelled by the court was an "abuse of process" would create an "absurd conclusion." Again, Defendants repeated their assertion that the court could not presume a malicious intent

or wrongdoing from their dismissal of the prior case against Stout.

{¶ 34} Defendants asserted that CGO did not file suit against Stout in the 2016 case as an individual, as Stout claimed, but under a claim for agency liability for the debt of a business; CGO alleged that Stout "*may* bear liability under agency law." The trial court agreed when it denied Stout's motion for judgment on the pleadings and sanctions. Defendants also asserted that Stout failed to demonstrate that Yurechko "acted with malice and for an ulterior purpose *completely separate from [her] client's interest"* (emphasis sic), and that Yurechko's and CGO's interests had been aligned in seeking to collect a commercial gas debt from an agent under Ohio agency law.

{¶ 35} Finally, Defendants asserted that any alleged improper act constituting abuse of process must occur during the process, and insofar as Stout relied on an email from Yurechko that was sent before the complaint was filed (stating it did not matter to her which entity paid as long as the bill got paid), this act was not part of the process. Moreover, Defendants asserted that the email did not show that Yurechko had an ulterior purpose separate from CGO's purpose.

{¶ 36} Regarding defamation, Defendants contended that the doctrine of absolute privilege "carve[d] out an exception for allegedly defamatory statements made in a judicial proceeding where the statement [was] material and relevant to the issues in that case," thus precluding a claim for defamation. According to Defendants, the statement that Stout alleged was defamatory was CGO's allegation that he was doing business as "Inside Out," which claim was "material, relevant and 'reasonably related' " and even an "essential aspect" of the proceedings, and whether that allegation could have ultimately been proven was "inconsequential."

{¶ 37} Defendants argued that Stout was attempting to distract the court by focusing on whether he (Stout) ultimately could have been found liable in the 2016 case, when the only legitimate consideration was whether the filing of the case itself in the name of "William Stout dba Inside Out" was defamatory, but defamation would apply only "if [CGO] had alleged something unrelated to the case in its Complaint to embarrass or prejudice Stout."

{¶ 38} Regarding civil conspiracy, Defendants argued that Stout had not alleged or presented any evidence of having sustained actual damages as a result of "any non-existent conspiracy"; Stout only alleged that he incurred legal fees, which are awarded as part of the costs of the litigation and do not constitute actual damages, and therefore his civil conspiracy claim had to fail. They also argued that there was no evidence of a conspiracy between CGO and its attorney.

{¶ 39} On July 29, 2020, Defendants filed a memorandum in opposition to Stout's motion for summary judgment. On August 20, 2020, Stout filed a reply in support of his motion for summary judgment; he attached multiple exhibits, including the August 6, 2020 deposition of Yurechko.

{¶ 40} On August 26, 2020, the trial court ruled on the parties' motions for summary judgment. First, the court considered Defendants' motion for summary judgment. Regarding the abuse of process claim, the court assumed, without deciding, that the legal proceeding was set in motion in proper form and with probable cause, because this view of the facts was most favorable to the non-movant, CGO. The court found that, assuming CGO had probable cause to believe Stout, dba Inside Out, was a proper party from whom to collect the outstanding gas bill, there was "no evidence that

the lawsuit ever became about anything else." The court noted that CGO dismissed the 2016 case without prejudice before it ever asked the court to enter judgment against Stout, and the parties were in the midst of discovery when the action was dismissed. According to Defendants, discovery in that case "had been necessary to further clarify [their] claims," and the trial court found that Stout had provided no evidence to support his assertion that CGO had some "improper ulterior purpose" for conducting such discovery. Rather, the court concluded that, assuming the 2016 litigation was brought with probable cause to believe Stout was doing business as Inside Out, then conducting discovery to uncover Stout's ownership/membership interests, "for the purpose of attaining collection on the past due account from a proper responsible party," was "within the scope of allowable discovery."

{¶ 41} Regarding the abuse of process claims against Yurechko and her law firm, the court determined that, "as is apparent from every motion filed herein, a party moves 'by and through counsel' – [and] motions made and actions taken by a client in litigation are not presumed to be the action of the attorney." Therefore, for Stout's claim against the attorneys to prevail, he would be required to demonstrate that the attorneys acted "maliciously and for an ulterior purpose completely separate from their client's interest." The court concluded that the pursuit of discovery, in and of itself, was insufficient evidence of malice and/or the pursuit of an ulterior purpose.

{¶ 42} For these reasons, the trial court concluded that there were no genuine issues of material fact regarding Stout's abuse of process claims.

{¶ 43} Regarding the defamation claim, the court noted that Stout cited allegedly false statements made in the CGO's 2016 complaint, but if this were the basis of his claim,

the doctrine of absolute privilege applied to the allegedly defamatory statements because "they were made in a judicial proceeding and the statements at issue were both material and relevant to the issues in the case." Further, the court found that, even if absolute privilege did not apply, Stout had failed to point to evidence "to support an essential element of defamation – injury," because the injury "of *expense of litigation* fails to satisfy this element." Thus, the court found no genuine issue of material fact as to Stout's defamation claims.

{¶ 44} Finally, regarding civil conspiracy, the court found that "[b]ecause no underlying unlawful act has been found to have sufficient support to create a genuine issue of material fact," Stout's civil conspiracy claim likewise was properly disposed of on summary judgment.

{¶ 45} For these reasons, the trial court granted Defendants' motion for summary judgment; it therefore found it unnecessary to separately address the arguments set forth in Stout's motion for summary judgment.

{¶ 46} Stout asserts two assignments of error on appeal from the trial court's judgment. His first assignment of error states:

THE TRIAL COURT ERRED IN GRANTING SUMMARY JUDGMENT IN FAVOR OF DEFENDANTS * * *.

{¶ 47} Stout contends that the trial court erred in granting Defendants' motion for summary judgment, reiterating the arguments he made in the trial court. Regarding abuse of process, Stout asserts that CGO pursued litigation against him notwithstanding that they knew the basis upon which they brought suit against him was "false and without factual and legal bases" and conducted discovery only in an effort to determine his

relationship with Inside Out and Inside Out Youth Homes. Specifically, he argues that, at some point during the 2016 case, Defendants no longer had probable cause to believe that he was doing business as Inside Out, and that the trial court erred by failing to apply the laws of agency under Ohio law to the undisputed facts of the case. According to Stout, the trial court should have determined, as a matter of law, that "the public disclosure of Inside Out" eliminated any potential basis upon which Defendants could recover from Stout in his individual capacity, and the litigation should not thereafter have been allowed to proceed.

{¶ 48} According to Stout, the trial court failed to address Defendants' knowledge, acquired during the course of litigation, that he was not doing business as Inside Out. Stout asserts that the court failed to acknowledge the following specific facts:

● After filing the 2016 complaint on behalf of CGO, Yurechko was sent a copy of the Ohio Secretary of State's certificate of registration for Inside Out, documenting its legal status.

● After filing the complaint, Yurechko herself confirmed that inside Out was an entity registered with the State of Ohio, and she attached information related thereto to a pleading she filed on behalf of CGO in May 2016.

● The corporate records of CGO, which were reviewed by CGO and Yurechko, identified Inside Out as the "customer" at the address in question. The records also showed that Inside Out had its own unique "PCID" number (i.e., account number) for the service address of 501 S. Wittenberg Avenue.

● The unique PCID number appeared on each corporate record on which Inside Out was identified as CGO's customer, including an exhibit attached

to CGO's complaint.

● Yurechko stated that it did not matter who paid, as long as the bill got paid.

{¶ 49} Stout asserts that CGO knew Inside Out was "a publicly disclosed, existent entity, registered with the State of Ohio," in the first half of 2016, and therefore the trial court should have found that Defendants' actions in maintaining suit and conducting discovery after that point had an ulterior purpose from the initial purpose of the litigation. Stout claims the trial court "summarily – and improperly – conclude[d]" that, simply because Defendants may have had probable cause to commence the lawsuit, they could also continue that lawsuit to conduct "any discovery they desire[d] for as long a period of time as they desire[d]."

{¶ 50} Stout asserts that he could not be held personally liable for Inside Out's debts as a matter of law, since Inside Out was a separate and distinct legal entity, and the agency relationship that CGO "attempted to create simply never existed."   He argues that Defendants conducted discovery "directed towards entities not parties to the litigation," namely Inside Out and Inside Out Youth Homes, and attempted to "force [Stout] to answer on behalf of whatever entity [CGO] deemed relevant to its cause."   According to Stout, Inside Out was a separate legal entity, and he was not a sole proprietor doing business under the fictitious name of Inside Out; therefore he was not personally liable for any debts of Inside Out individually or in an agency capacity.

{¶ 51} Stout asserts that the trial court erred in concluding that CGO's litigation and discovery directed to him -- but seeking information about inside Out and Inside Out Youth Homes -- was permissible because of "the erroneous assumption" that Stout was a real

party in interest. Rather, the "trial court's analysis and decision constitute[d] a perversion of the discovery rules" and set a precedent that "a plaintiff may maintain a lawsuit against any person – *even after knowing that person is not responsible* – for the sole purpose of conducting discovery in order to find the appropriate party," contrary to Ohio law.

{¶ 52} Regarding defamation, Stout argues that CGO was clearly on notice that Inside Out was a legal entity under Ohio law, but Defendants nonetheless alleged that he was a sole proprietor doing business as Inside Out, which was irrefutably false and harmed his reputation by implying he owed a considerable debt that he did not owe. Stout also asserts that the trial court erred in finding that the doctrine of absolute privilege applied to the defamatory statements in this case, because the statements in CGO's complaint did "not have a reasonable relation to the proceedings" regarding the collection of a debt owed by Inside Out. Stout had never been a customer of CGO at 501 S. Wittenberg Avenue, and there was no evidence that he assumed responsibility for the debt owed by Inside Out to CGO.

{¶ 53} Stout further asserts that the trial court erred in finding that he did not suffer an injury as a result of the defamatory statements, after CGO had refused to dismiss the litigation against him for more than three years, knowing that its claims could not succeed. As a result, Stout incurred "substantial legal fees and expenses defending himself in a frivolous and meritless lawsuit." Stout asserts that summary judgment in favor of CGO on his defamation claim was improper.

{¶ 54} Finally, regarding civil conspiracy, Stout asserts that Defendants "formed a malicious combination to pursue debt collection activity" against him for more than three years, knowing it to be illegal, and that such wrongful conduct could not have been

accomplished "absent the combination of parties."

{¶ 55} In response, Defendants assert that Stout's claim for abuse of process failed as a matter of law because Stout specifically argued that there was no probable cause to file CGO's 2016 complaint, and this assertion undermined the required element of establishing probable cause for an abuse of process claim. Defendants also argue that Stout failed establish that Defendants had an ulterior purpose or attempted to "obtain something collateral" in the CGO case. "[Defendants] merely carried out the process to its authorized conclusion when seeking discovery related to [CGO] itself."

{¶ 56} Defendants assert that, although Stout "repeatedly declares" that Defendants knew he was not liable for the gas service at the Wittenberg address, this fact was never determined in either case. Defendants cite the "interchangeable use" in the handling of payment of the CGO accounts of the entities "Inside Out," "Inside Out Youth Homes," and "Springfield Real Estate," all of which were "directly and indirectly affiliated with and influenced by Stout." According to Defendants, Stout created a " confusing shell game" and seeks to relieve himself and his entities of legal obligations by allowing employees and agents of the various entities, including himself, to act on accounts of the other entities.

{¶ 57} Defendants assert that the court allowed discovery to continue in the 2016 case to allow CGO "to obtain information on the interplay between the entities and Stout's liability under agency law," but that Stout continually refused to provide the information in discovery, and CGO chose to dismiss the complaint without prejudice due to mounting litigation costs, as was its right.

{¶ 58} Defendants argue that Stout also failed to establish the second element of

an abuse of process claim, i.e., that the process was perverted to accomplish an ulterior purpose; he did not identify an act committed during the process that was not proper in the normal conduct of the proceeding or Defendants' ulterior motive.  Defendants argue "carry[ing] out the process to its authorized conclusion" in an effort to recover on a debt does not constitute an abuse of process.

{¶ 59} Defendants argue that Yurechko's affidavit established that there was a "multitude of conflicting information" about the various entities and their representatives, Stout's degree of control over those entities, and which entity used the gas supplied to the Wittenberg address.  According to Defendants, under theories of unjust enrichment and agency, discovery seeking additional information about each of these entities "was reasonably calculated to uncover admissible evidence" and was permitted by Civ.R. 26. Moreover, the discovery was not only permitted but compelled by the trial court, and conducting discovery under such circumstances cannot establish an "ulterior purpose outside the lawsuit."

{¶ 60} Defendants also contend that CGO's and Yurechko's interests were "aligned"; they both sought to collect a commercial gas debt from an agent under Ohio agency law, and the protected nature of the litigation, including discovery, was not attributable to CGO or its attorney.

{¶ 61} Defendants assert that they were properly granted summary judgment because they were entitled to judgment on the legal issues presented.  They argue that, although Stout believes that CGO could not have proven agency or unjust enrichment, that issue was never resolved, and the evidence on which Stout relies (i.e., that Inside Out was a legal entity) did not in itself prove that Stout could not be "liable as an agent,"

especially given the interchangeable use of the various entities with ties to Stout "in the handling and payment of the accounts" with CGO.

**{¶ 62}** Defendants assert that all statements made in relation to CGO's 2016 case were material to and related to the lawsuit, related to the collection of commercial debt and Stout's agency relationship to various entities associated with that debt, and therefore covered by absolute privilege. They also assert that the complaint made clear that they were alleging that Stout could be liable as a result of an agency relationship.

**{¶ 63}** Regarding damages, Defendants assert that Stout's only allegation with respect to damages was that he incurred legal fees, and that such expenses do not constitute actual damages; Stout cited "no precedent to support the award of attorney fees as some sort of damages, where there [was] no actual malice, no compensatory damages, and no punitive damages in the case." Moreover, Defendants note that Stout's motion for summary judgment did not allege any actual malice or actual compensatory damages, and that it did not request punitive damages.

**{¶ 64}** With respect to the alleged conspiracy, Defendants assert that there was no "underlying unlawful act" to support a claim for civil conspiracy, including "no malicious combination to pursue debt collection activity." They argue that Yurechko lawfully filed and pursued CGO's claim without any "conspiracy" between her and CGO, and that Yurechko "did not have or need the 'conspiratorial assistance' of" CGO to file the complaint in the 2016 case.

**{¶ 65}** As this Court has noted:

A Civ.R. 56 motion for summary judgment may be granted when the moving party demonstrates (1) there is no genuine issue of material fact,

(2) the moving party is entitled to judgment as a matter of law, and (3) viewing the evidence most strongly in favor of the nonmoving party, reasonable minds can come to but one conclusion and that conclusion is adverse to the party against whom the motion for summary judgment is made. *Harless v. Willis Day Warehousing Co.*, 54 Ohio St.2d 64, 66, 375 N.E.2d 46 (1978). As set forth in Civ.R. 56(C), the moving party bears the initial burden of informing the trial court of the basis for the motion and identifying those portions of the record demonstrating the absence of a genuine issue of material fact. *Dresher v. Burt*, 75 Ohio St.3d 280, 293, 662 N.E.2d 264 (1996). Once the moving party meets this its initial burden, the burden shifts to the non-moving party to respond with specific facts showing that a genuine factual issue exists for trial. *Id.*

Civ.R. 56(C) delineates the types of evidence a party may use to support or oppose a summary judgment motion:

> Summary judgment shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence, and written stipulations of fact, if any, timely filed in the action, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. No evidence or stipulation may be considered except as stated in this rule.

Our review of the trial court's decision to grant summary judgment is de novo. *Helton v. Scioto Cty. Bd. of Commrs.*, 123 Ohio App.3d 158, 162,

703 N.E.2d 841 (4th Dist.1997).

*Rolling v. Kings Transfer, Inc.*, 2d Dist. Montgomery No. 28753, 2020-Ohio-5541, ¶ 11-13.

## I. Abuse of Process

{¶ 66} The Ohio Supreme Court set forth the elements of an abuse of process claim in *Yaklevich v. Kemp, Schaeffer & Rowe Co., L.P.A.*, 68 Ohio St.3d 294, 626 N.E.2d 115 (1994), at syllabus, as follows: "The three elements of the tort of abuse of process are: (1) that a legal proceeding has been set in motion in proper form and with probable cause; (2) that the proceeding has been perverted to attempt to accomplish an ulterior purpose for which it was not designed; and (3) that direct damage has resulted from the wrongful use of process." "Conversely, abuse of process does not occur when a party uses the court to pursue a legal remedy that the court is empowered to give. * * *." *Sivinsky v. Kelley*, 8th Dist. Cuyahoga No. 94296, 2011-Ohio-2145, ¶ 37, citing *Havens-Tobias v. Eagle,* 2d Dist. Montgomery No. 19562, 2003-Ohio-1561.

{¶ 67} In further discussing the tort, the Ohio Supreme Court noted that in a typical case, the abuse of process does not "*arise out of* the transaction or occurrence that is the subject matter of the underlying claim" but instead "arises from events that occur during the course of the underlying litigation." (Emphasis sic.) *Yaklevich* at 299. "[T]he key consideration in an abuse of process action is whether an improper purpose was sought to be achieved by the use of a lawfully brought previous action." *Id.* at 300.

{¶ 68} As this Court has noted:

"[I]n order to show the process was perverted to accomplish an ulterior purpose the plaintiff must identify both an act committed during the

process that was not proper in the normal conduct of the proceeding and the defendant's ulterior motive." (Emphasis added.) *Palivoda v. Felix*, 11th Dist. Ashtabula No. 2010-A-0017, 2011-Ohio-5231, ¶ 44 (Wright, J., concurring in judgment). The defendant must use the process in a way that perverts the legal proceeding. *Id.* at ¶ 45. "[T]here is no liability [for abuse of process] where the defendant has done nothing more than carry out the process to its authorized conclusion, even though with bad intentions." *Yaklevich* at 298, 626 N.E.2d 115, fn. 2, citing Prosser & Keeton, Law of Torts (5 Ed.1984) 898. Abuse of process typically involves using a legal proceeding to coerce a defendant with respect to something outside of the legal proceeding itself. *Broadnax v. Greene Credit Service*, 118 Ohio App.3d 881, 890-891, 694 N.E.2d 167 (2d Dist.1997).

*Cox v. Oliver*, 2d Dist. Montgomery No. 26891, 2016-Ohio-4575, ¶ 15.

**{¶ 69}** After considering *Yaklevich*, this Court noted as follows:

In a later case, the Supreme Court stated that " '[a]buse of process' * * * connotes the use of process properly initiated for improper purposes." *Robb v. Chagrin Lagoons Yacht Club, Inc.* (1996), 75 Ohio St.3d 264, 271, 662 N.E.2d 9, 14. In explaining this concept, the court stated:

"In an abuse of process case, '[t]he improper purpose usually takes the form of coercion to obtain a collateral advantage, not properly involved in the proceeding itself, such as the surrender of property or the payment of money, by the use of the process as a threat or a club.' Prosser & Keeton on Torts (5 Ed.1984), Section

121.  Simply, abuse of process occurs where someone attempts to achieve through use of the court that which the court is itself powerless to order."  *Id.* [a]t 271, 662 N.E.2d at 14.

The facts in *Robb* provide an excellent example of the use of process for an improper, ulterior purpose.   In that case, the defendants, who were members of a yacht club, had club grievances filed against them by another member.   The defendants thereafter filed multiple lawsuits against the yacht club.   A letter written by one of the defendants to the membership stated that the lawsuits would be dismissed if the grievances were dropped.  The Supreme Court held that "reasonable minds could conclude that [the defendants] instituted at least one of their suits with the intention to use it as a club to coerce the membership to vote in their favor," regarding their grievances.   *Id.*   The Supreme Court noted that "the trial court had no authority to order club members how to vote."   *Id.*   Therefore, there was clear evidence that the lawsuits filed by the defendants against the yacht club were filed for an ulterior, improper purpose.

*Robinson v. Masonic Health Care, Inc.*, 2d Dist. Montgomery No. 21440, 2006-Ohio-5398, ¶ 13-15.

{¶ 70} "Abuse of process does not lie for the wrongful bringing of an action, but for the improper use, or 'abuse' of process."  *Clermont Environmental Reclamation Co. v. Hancock*, 16 Ohio App.3d 9, 11, 474 N.E.2d 357 (12th Dist.1984).  In *Kremer v. Cox*, 114 Ohio App.3d 41, 52, 682 N.E.2d 1006 (9th Dist.1996), Kremer's abuse of process claim was "premised solely on the filing of Cox's complaint itself, which Kremer claim[ed]

was done without probable cause and for nefarious purposes."  The Ninth District concluded as follows:

> Such a rationale may support a claim for malicious prosecution, but cannot provide a sufficient foundation for an abuse of process action. *Yaklevich v. Kemp, Schaeffer & Rowe Co., L.P.A.,* 68 Ohio St.3d at 297-298, 626 N.E.2d at 117-118.  The trial court should have granted Cox's motion for a new trial on the ground that the jury's verdict was contrary to law pursuant to Civ.R. 59(A)(7), since, as a matter of law, Kremer was not entitled to relief for the mere institution of Cox's lawsuit.

*Id.*

**{¶ 71}**  "[I]f [a legal] proceeding is instituted or continued with a lack of probable cause, then a claim for abuse of process fails."  *Moffit v. Literal*, 2d Dist. Montgomery No. 19154, 2002-Ohio-4973, ¶ 61.   In *Moffit,* we further stated:

> * * * " 'Probable cause is a reasonable ground of suspicion supported by circumstances sufficiently strong in themselves to warrant a cautious man in believing that the accused is guilty.' "  *Cottman v. Cottman,* (Md.Ct.App.1983), 56 Md.App. 413, 468 A.2d 131, quoting from *Exxon Corp v. Kelly*, (1978), 281 Md. 689, 381 A.2d 1146 (citations omitted).

> This definition of probable cause allows for a liberal construction. As applied to attorneys, the term is given an even broader interpretation because "[if] attorneys cannot act and advise freely, parties could not obtain their legal rights. Therefore, [s]uits for * * * abuse of process against attorneys * * * are viewed with disfavor in law and are to be carefully guarded

against." *Id.*

*Id.* at ¶ 62-63.

**{¶ 72}** This Court has further explained:

> * * * [W]hen an action for abuse of process is raised against an attorney, he may only be held liable if he acts maliciously and has an ulterior purpose which is completely separate from his client's interest. *Thompson v. R & R Service Systems, Inc. v. Cook* (June 19, 1997), Franklin App. No. 96APE10-1277, 96APE10-1278, unreported, at p. 14, citing *Scholler v. Scholler* (1984), 10 Ohio St.3d 98, paragraph one of syllabus (other citations omitted).

*Wolfe v. Little*, 2d Dist. Montgomery No. 18718, 2001 WL 427408, *2 (Apr. 27, 2001).

**{¶ 73}** Construing the evidence most strongly in favor of Stout, we conclude that the trial court properly granted summary judgment in Defendants' favor on Stout's abuse of process claim. While the trial court assumed, without deciding, for summary judgment purposes, that "the legal proceeding was set in motion in proper form and with probable cause," Stout's complaint and brief made clear that he believed CGO lacked probable cause when it instituted suit against him. Paragraph 12 of Stout's complaint stated: "Prior to the commencement of the [CGO] lawsuit and since then, Yurechko and [CGO] have been, and continue to be, repeatedly advised of the undeniable fact that Inside Out, the entity with whom Yurechko's client has a service agreement, is an Ohio corporation for non-profit and that it is not a fictitious name used by [Stout]." Paragraph 16 of the complaint characterized CGO's action against Stout as "a frivolous and meritless lawsuit," and it asserted that Defendants had refused to voluntarily dismiss the 2016 lawsuit even

though they knew or should have known that their claims against Stout could not succeed. Paragraph 31 of the complaint provided that "even though Defendants knew, or should have known, that [Stout] was not a named party to any service agreement or contract with [CGO] * * * Defendants knowingly employed unfair or unconscionable means to collect or attempt to collect a debt." And Paragraph 40 provided that Defendants "formed a malicious combination" to do the aforementioned unlawful acts, with CGO falsely asserting a claim against Stout for which there was no legal liability," and that the CGO lawsuit "was neither factually nor legally viable against [Stout]."

{¶ 74} In *Cox v. Oliver*, 2d Dist. Montgomery No. 26891, 2016-Ohio-4575, ¶ 17, we observed:

> * * * [T]he trial court held that under any reasonable reading of the complaint, Cox had alleged that Oliver lacked probable cause to prosecute her. Because that allegation logically precluded the possibility that Oliver had probable cause to prosecute Cox, as is required for an abuse of process claim, the trial court granted the motion to dismiss. Upon consideration, we agree with the trial court.

{¶ 75} Stout makes similar assertions in his brief. For example, Stout refers to the "frivolous nature" of CGO's complaint, and CGO's "bogus claim against him for contractual liability and/or damages." He argues that CGO "pursued the litigation for three years and refused to dismiss the lawsuit * * *, *even though the entire basis upon which they brought suit against him was known to be false and without factual legal bases.*" The trial court properly concluded that Stout's allegations and arguments defeated the first element of his abuse of process claim, namely a legal proceeding set in

motion in proper form and with probable cause.

{¶ 76} Further, Stout failed to establish the second element of an abuse of process claim, that the proceeding was perverted to attempt to accomplish an ulterior purpose for which it was not designed. As noted in *Sivinski*, 8th Dist. Cuyahoga No. 94296, 2011-Ohio-2145:

> [T]he ulterior motive contemplated by an abuse of process claim generally involves an attempt to gain an advantage outside the proceeding, using the process itself as the threat. [*Wolfe v. Little*, 2d Dist. Montgomery No. 18718, 2001 WL 427408 (April 27, 2001)] (noting typical ulterior purposes as "extortion of money, prevention of a conveyance, compelling someone to give up possession of something of value, when these things were not the purpose of the suit").

*Id.* at ¶ 36.

{¶ 77} Stout asserted that CGO improperly pursued discovery in the course of the proceedings. However, we note that Civ.R. 26(B)(1) provides for broad discovery:

> Unless otherwise limited by court order, the scope of discovery is as follows: Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Information within this scope of discovery need

not be admissible in evidence to be discoverable.

{¶ 78} Construing the evidence most strongly in favor of Stout, we conclude that he failed to establish an ulterior motive outside the process itself to obtain payment on the account. As the trial court noted, the pursuit of discovery is insufficient evidence of malice or the pursuit of an improper purpose. In other words, Stout failed to identify an act committed by CGO in the course of its action against him that was not proper in the normal conduct of the proceeding between the filing of its complaint and CGO's dismissal of the action. In the absence of a genuine issue of material fact, the trial court properly granted summary judgment in favor of Defendants on Stout's abuse of process claim.

## II. Defamation

{¶ 79} As this Court has noted:

"Defamation is a false publication causing injury to a person's reputation, or exposing the person to public hatred, contempt, ridicule, shame or disgrace or affecting him adversely in his trade or business." (Citation omitted.) *Matalka v. Lagemann* (1985), 21 Ohio App.3d 134, 136, 21 OBR 143, 486 N.E.2d 1220. Defamation can be in the form of either slander or libel. Slander generally refers to spoken defamatory words while libel refers to written or printed defamatory words. *Lawson v. AK Steel Corp.* (1997), 121 Ohio App.3d 251, 256, 699 N.E.2d 951. The essential elements of a defamation action, whether slander or libel, are that the defendant made a false statement of fact, that the false statement was defamatory, that the false defamatory statement was published, that the plaintiff was injured and that the defendant acted with the required degree

of fault. *Celebrezze v. Dayton Newspapers, Inc.* (1988), 41 Ohio App.3d 343, 346-347, 535 N.E.2d 755.

*Matikas v. Univ. of Dayton*, 152 Ohio App.3d 514, 2003-Ohio-1852, 788 N.E.2d 1108, ¶ 27 (2d Dist.).

**{¶ 80}** In *Surace v. Wuliger*, 25 Ohio St.3d 229, 495 N.E.2d 939 (1986), the Ohio Supreme Court held: "As a matter of public policy, under the doctrine of absolute privilege in a judicial proceeding, a claim alleging that a defamatory statement was made in a written pleading does not state a cause of action where the allegedly defamatory statement bears some reasonable relation to the judicial proceeding in which it appears." *Id.* at syllabus.

**{¶ 81}** As noted in *Justice v. Mowery*, 69 Ohio App.2d 75, 430 N.E.2d 960 (10th Dist.1980):

> An attorney has absolute immunity against a libel and slander action for statements made representing a client in the course of litigation, either in the pleadings, the briefs, or in oral statements to the judge and jury, so long as the defamatory matter may possibly bear some relation to the judicial proceeding. *See Erie County Farmers' Ins. Co. v. Crecelius* (1930), 122 Ohio St. 210, 171 N.E. 97; Annotation 38 A.L.R.3d 272; Annotation 61 A.L.R.2d 1300; and Annotation 32 A.L.R.2d 423.

> The great weight of authority is that attorneys conducting judicial proceedings are privileged from prosecution for libel and slander in respect to words or writings used in the course of such proceedings when the words and writings are material and pertinent to the question involved, regardless

of how false, malicious, or injurious they may be.   In determining whether the words and writings are relevant to the subject of inquiry, great liberality is to be used, as otherwise a party or his attorney may be deterred from prosecuting an action vigorously by fear of personal liability for libel and slander. * * *

Although the result may be harsh in some instances and a party to a lawsuit may possibly be harmed without legal recourse, on balance, a liberal rule of absolute immunity is the better policy, as it prevents endless lawsuits because of alleged defamatory statements in prior proceedings.   Sufficient protection from gross abuse of the privilege is provided by the fact that an objective judge conducts the judicial proceedings and that the judge may hold an attorney in contempt if his conduct exceeds the bound of legal propriety or may strike irrelevant, slanderous or libelous matter.

*Id.* at 76-77.

{¶ 82} Applying the liberal rule of relevance, and construing the evidence most strongly in favor of Stout, we agree with Defendants that the statement, "Stout dba Inside Out" bore some reasonable relation to CGO's complaint against Stout, and that the allegations in CGO's complaint were directly relevant to CGO's cause of action.   The gist of CGO's complaint was that Inside Out opened an account with CGO, then failed to pay its bill, and CGO took action against "Stout dba Inside Out" under a potential agency theory for recovery.   As noted above, Stout was the founder, president, and statutory agent of Inside Out (and the founder of Inside Out Youth Homes).   Since Yurechko's and the law firm's statements in the complaint against Stout were made in the course of

representing CGO in litigation, and they had no interest separate from CGO's interest, the firm and attorney enjoyed an absolute privilege for the statements.

**{¶ 83}** Finally, we agree with Defendants that Stout failed to establish an injury or damages. *See Griffin v. Lamberjack*, 96 Ohio App.3d 257, 644 N.E.2d 1087 (6th Dist.1994) ("Attorney fees are recoverable as compensatory damages in an action where punitive damages are properly awarded. * * * Thus, in a tort action, an award of attorney fees is inextricable intertwined with an award of punitive damages. This principle was recognized by the Ohio Supreme Court in *Digital & Analog Design Corp. v. N. Supply Co.* (1992), 63 Ohio St.3d 657, 662, 590 N.E.2d 737, 742[.]").

**{¶ 84}** Based upon the foregoing, CGO was entitled to summary judgment as a matter of law on Stout's defamation claim.

### III. Civil Conspiracy

**{¶ 85}** As this Court has noted:

"A claim for civil conspiracy requires proof of 'a malicious combination of two or more persons to injure another in person or property, in a way not competent for one alone, resulting in actual damage.' " *Kimmel v. Lowe's, Inc.,* 2d Dist. Montgomery No. 23982, 2011-Ohio-28, ¶ 20, quoting *Kenty v. Transamerica Premium Ins. Co.,* 72 Ohio St.3d 415, 419, 650 N.E.2d 863 (1995). "A claim for conspiracy cannot be made [the] subject of a civil action unless something is done which, in the absence of the conspiracy allegations, would give rise to an independent cause of action." *Cully v. St. Augustine Manor,* 8th Dist. Cuyahoga No. 67601, 1995 WL 237129, *4 (April 20, 1995). In other words, "[a]n underlying unlawful

act is required before a civil conspiracy claim can succeed." *Id.,* quoting *Williams v. Aetna Fin. Co.,* 83 Ohio St.3d 464, 475, 700 N.E.2d 859 (1998).

* * *

*Davis v. Clark Cty. Bd. of Commrs.,* 2013-Ohio-2758, 994 N.E.2d 905, ¶ 20 (2d Dist.2013).

{¶ 86} As noted by the Supreme Court of Ohio:

* * * The malice involved in the tort is "that state of mind under which a person does a wrongful act purposely, without a reasonable or lawful excuse, to the injury of another." *Pickle v. Swinehart* (1960), 170 Ohio St. 441, 443, 11 O.O.2d 199, 200, 166 N.E.2d 227, 229; *Gosden,* 116 Ohio App.3d [195,] 219, 687 N.E.2d [481,] 496.

*Williams* at *475.

{¶ 87} Paragraph 40 of Stout's complaint stated that "Defendants formed a malicious combination to do the aforementioned unlawful acts, with Defendant [CGO] asserting a claim against [Stout] for which there is no legal liability, and the other Defendants, Yurechko and [the law firm], filing the 2016 [CGO] lawsuit against [Stout] * * *." Having determined that Stout's claims for abuse of process and defamation failed, his civil conspiracy claim failed as well.

{¶ 88} For the foregoing reasons, Stout's first assignment of error is overruled.

{¶ 89} Stout's second assignment of error is as follows:

THE TRIAL COURT ERRED IN NOT GRANTING SUMMARY JUDGMENT IN FAVOR OF PLAINTIFF, WILLIAM R. STOUT, AND AGAINST THE DEFENDANTS.

**{¶ 90}** Having concluded that Stout failed to establish any genuine issue of material fact on his claims as set forth above, and that CGO was entitled to summary judgment as a matter of law, analysis of Stout's second assignment of error is not required, and it is overruled.

**{¶ 91}** Stout's assignments of error having been overruled, the judgment of the trial court is affirmed.

. . . . . . . . . . . . .

TUCKER, P.J. and WELBAUM, J., concur.

Copies sent to:

Jonathan Hollingsworth
Patrick J. Janis
Matthew R. Rechner
Sarah Mancuso
Hon. Richard J. O'Neill